In the Matter of the Claim of ROBERT SAMMIS, Respondent, against QUEENS BOROUGH GAS & ELECTRIC COMPANY, Employer, and UTILITIES MUTUAL INSURANCE Co., Insurance Carrier, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 10, 1939.

*Paul Koch*, for the appellants.

*John J. Bennett, Jr., Attorney-General* [*Leon Freedman, Assistant Attorney-General*, of counsel], for the State Industrial Board, respondent.

McNAMEE, J. The claimant was injured in his employment when he came into contact with an electric wire, and his shoulder, hand and wrist were seriously burned. The Board found that the axilla and chest on one side were badly scarred and the muscles

of the shoulder were atrophied, that the claimant was permanently partially disabled, and that his wage-earning capacity was reduced from thirty-eight dollars and four cents to five dollars per week. Compensation has been paid at twenty dollars a week for nearly four years without question, and in addition hospital and medical expenses amounting to nearly $9,000.

Appellants present two contentions, viz.: (1) That the award was made erroneously under section 15, subdivision 3, paragraph v, " Other cases," of the Workmen's Compensation Law, whereas claimant's right to compensation should have been determined on the theory that the permanent injury involved only the loss of an arm, a schedule injury according to the table given in that sub-division; and (2) that the employer was prevented by the arbitrary action of the State Industrial Board from introducing proper testimony on claimant's capacity to earn.

Much of the testimony was to the effect that the axilla, shoulder and scapular region were affected, and that contractions and limitations resulted. We regard the testimony as sufficient to justify the finding that claimant suffered an injury more extensive than a schedule loss of an arm. (*Mestler* v. *American Book Sales Co.*, 248 App. Div. 646; affd., 272 N. Y. 544; *Cartenuto* v. *McConnell & Co., Inc.*, 254 App. Div. 612; *Di Benedetto* v. *McKinney Corp.*, 252 id. 712; *Kallio* v. *Sachs*, 251 id. 759; *Schultz* v. *Buffalo Dry Dock Co.*, 250 id. 807.)

On the question of claimant's earning capacity the appellants contend that the employer was deprived of an adequate trial of the issue. Nine doctors had testified at various hearings between December, 1935, and March, 1938, and, with a single exception, all of them gave evidence to the effect that claimant was able to do gainful work that would not require the use of the upper left extremity, or, as some of them stated, such work as a one-arm man can do. The other medical witness, Dr. Fisher, made his examination and report more than fifteen months prior to the last hearing, and even that report stated that the claimant then had " a small earning capacity."

The evidence given by the claimant himself as to his capacity to earn to say the least was meager and unsatisfactory. At the hearings in December, 1935, and in June, 1936, he testified that he had done no work and had sought none and that the employer did not offer to give him any work. This testimony he repeated at the hearing in March, 1938. But he admitted on cross-examination that the employer offered him " Something sort of to do," and finally that the employer offered him a position as a telephone operator and that he " wasn't feeling well enough to take it at that

time," and that he had not been at the company's place of business in six months. The claimant sought a lump sum award to enable him to open a riding academy and at the hearing in November, 1936, he withdrew that request. After repeated denials that he had done any work he testified at the hearing in November, 1936, that he had worked at the Rockaway Beach race track, "pony work," and admitted earnings of five dollars a week. These fragments of evidence are scattered throughout the record and the subject-matter was not adequately presented at any of the places nor in all of them.

On the application for a rehearing it appears unequivocally that the employer was willing to give claimant a position as a telephone operator in its plant at a salary of fifteen dollars a week and offered to do so, and that claimant thereupon expressed fear that acceptance of the work might affect his right to receive compensation, not that he was unable to do the work indicated.

At the last hearing in March, 1938, the attorney for the appellants asked the opportunity to produce witnesses on the contention that they had offered work to the claimant that he could do and were willing to pay him fifteen dollars a week. The referee ignored the request, announced his decision and closed the case. The appellants excepted.

On the application to the Board for a review, in which the affidavit last mentioned was one of the moving papers, the Board denied the application with the statement that unless appellants "submit proof of a change in the * * * actual earning capacity which the claimant has established * * * or proof that you have offered the claimant, since the date of the last hearing," such work as he is able to perform and at a rate in excess of five dollars a week, the case "must remain closed." Thus the employer was called upon to submit proof of earning capacity above that claimed by the claimant and to show an offer of employment "since the date of the last hearing." It was that kind of proof, apart from the date, which the appellants tried to offer before the referee, and the offer was brushed aside. It was that kind of proof which was offered to the State Industrial Board on the application for a rehearing, and again the case was closed. It is not clear how the appellants are going to have their proof weighed and evaluated. An offer of this very proof was pending when the case was closed by the referee and again by the State Industrial Board.

It is true that subdivision 5-a of section 15 of the Workmen's Compensation Law provides for the establishment of wage-earning capacity by the proof of "actual earnings." But this does not

mean that actual earnings shall be the exclusive proof of earning capacity or that the fact may not be established by competent proof otherwise. Neither does it mean that the employer shall be prevented from offering his defense, viz., that the actual earnings of the claimant are not a measure of his earning capacity. The statute assumed good faith on the part of the claimant in proving actual earnings and it was never intended to prevent the employer from establishing the truth, if he can. Anything less would not be in harmony with our system of jurisprudence and our theory of a fair trial. The award should be reversed and the claim remitted to the State Industrial Board for the purpose of accepting such proof as may be offered on the question of claimant's earning capacity, with costs to the appellants against the State Industrial Board.

CRAPSER and BLISS, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent.

Award reversed and claim remitted to the State Industrial Board for the purpose of accepting such proof as may be offered on the question of claimant's earning capacity, with costs to appellants against the Board.