296 P.2d 954

**James A. SCOTT, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent.**

No. 6191.

Supreme Court of Arizona.

May 8, 1956.

H. S. McCluskey, Phoenix, for petitioner.

John F. Mills, Phoenix, for the Industrial Commission of Arizona, John R. Franks, Donald J. Morgan and Robert K. Park, Phoenix, of counsel.

UDALL, Justice.

Certiorari to the Industrial Commission of Arizona, respondent herein. Petitioner, James A. Scott, while in the employ of E. J. Wasielewski Construction Company as a journeyman-carpenter, was injured by an accident admittedly arising out of and in the course of his employment. The Commission assumed jurisdiction and by an appropriate order found the claim to be compensable. Petitioner, being dissatisfied with the final award holding this to be a scheduled injury has, by certiorari, brought the matter before us for review. Respondent, the Industrial Commission, appears as the insurance carrier. There is no appearance by the employer.

The allegations of Par. III of the petition for writ of certiorari—which were admitted to be true by the Commission's response—rather graphically describe both the accident and the nature of the injuries, viz.:

"III

"That on November 5, 1953, said employer had provided a ladder with several rungs missing for the use of its employees; that petitioner, unaware of the defective ladder, attempted to descend from the roof and fell approxi-

mately 3 feet. He caught a 2x4 brace with his left hand taking his full weight of 190 lbs thereon and thereby injured his cervical spine, neck, shoulder, and left arm. He was 60 years of age and [the accident] also aggravated pre-existing arthritic changes in the neck and shoulder and cervical spine."

For a period of approximately sixteen months, between the date of injury and the time when petitioner's condition was found to be stationary, he was compensated for either total temporary or partial temporary disability, and in addition thereto was allowed "accident benefits". It would seem from an examination of the file that petitioner was given the best treatment medical science had to offer; he was hospitalized several times and was either treated or examined in all by thirteen members of the medical profession including orthopedic surgeons. However, according to Dr. Moore he did not satisfactorily respond to treatment, i. e., his condition failed to materially improve. It was not until March 2, 1955, that three medical consultants found his condition to be stationary and no further treatment indicated. Their conclusion was:

"As a result of the injury sustained in the accident in question, we are of the opinion that Mr. Scott has a partial permanent disability which is referred to impaired function of the left upper extremity and is equivalent to approximately a 15% functional loss of the left arm."

The Commission by its award evidently adopted the consultants' final view that petitioner had suffered a permanent partial disability equal to 15% loss of function of the left (minor) arm; it further determined that this was a *scheduled* injury and hence allowed him additional compensation therefor in the sum of $203.40 monthly, for a period of seven and one-half months. (For complete loss of function of the minor arm the statute allows compensation for a period of fifty months.) This award is admittedly predicated upon the premise that petitioner suffered but one injury (i. e., to his left arm) which resulted in multiple conditions flowing therefrom. The soundness of this premise is sharply challenged by petitioner.

It seems to us that the crux of this appeal is whether the record sustains the Commission's determination that petitioner's disability from his injuries falls within the classification of "scheduled injuries" enumerated under Section 23–1044, subsections B. 13 and B. 21, A.R.S. 1956. If it does, the award should be affirmed; otherwise it must be set aside.

The issues are succinctly stated in petitioner's opening brief:

"Petitioner contends that his major injuries are to his nerve roots, the

cervical spine and nerves emerging therefrom, his neck, shoulder, and left arm, and also headaches; that the partial loss of use of his left arm and hand are only *one* of the results flowing from the major injuries.

"Petitioner contends his multiple injuries are compensable under Section 23–1044, subdivision C, A.R.S.1956, and that compensation for his multiple injuries, which have virtually destroyed his earning power, and capacity to obtain employment, cannot be limited to partial loss of the use of a minor arm under Section 23–1044, subsections B. 13 and B. 21, A.R.S.1956, as the Commission has attempted to do."

At the outset it should be noted that we are not here confronted with resolving a conflict of evidence under the well established rules of appellate practice. Respondent admits in its brief, "In the instant case, there is no conflicting medical opinion to be dealt with." The petitioner had no independent medical witnesses. All of such evidence came from cross-examination of the doctors to whom petitioner had been referred for examination or treatment by the Commission. Having carefully examined the entire record we agree with counsel for petitioner that the evidence from the doctors as to the multiple injuries flowing from the accident stands uncontroverted. These may be briefly summarized as follows: injury to the nerve roots, or central nervous system; aggravation of pre-existing osteo-arthritic changes in the cervical spine; irritation and inflammation of the nerves emerging from the cervical spine due to compression (radiculites); 50% limitation of motion in the neck; limitation of motion and disabling pain in left shoulder due to periarthritis; disabling headaches following efforts to use arm or neck; loss of grip in left hand; loss of sensation and partial use of thumb, first and second fingers of left hand; and disabling pain in left arm upon efforts to use it for any length of time.

The testimony of petitioner is uncontradicted that prior to the accident of November 5, 1953 he had never experienced any trouble with his neck, left shoulder or arm; that since this injury he must daily use a halter for traction on his neck to relieve pain; that the arm pains him when he uses it for even a brief period of time; and that as a result thereof he is wholly unable to follow any gainful occupation. It is true that his complaints are now largely subjective, but no doctor claims the limitations of body movement or pains with which he suffers are simulated. Dr. Swenson, one of the consultants, on being examined at the second hearing as to the possibility of future improvement in petitioner's condition, stated in effect that all reasonable medical care had been given to relieve this condition, that the chances of significant improvement are very slight,

and that it was probable the condition could become more aggravated. Dr. Ergenbright confirmed each of these conclusions.

Considering the overall picture, the following testimony seems quite significant:

"Mr. Scott:

"Q. And did Dr. LaJoie do anything with your arm, treat your arm itself? A. No, sir.

"Q. Did anyone else ever treat the arm as an arm? A. No, sir.

"Q. Then the only treatments you have ever had were for the shoulder and neck? A. Yes. * * *"

*     *     *     *     *     *

"Dr. Moore:

"Q. Now, then, as a result of your review of the history and your examination of the man did you find any injury to the arm itself below the shoulder joint? A. I don't recall that there was any. * * *"

In the light of this record it is interesting to observe how the doctors and the Commission rationalized that the injury could be evaluated percentage-wise in the functional loss of use of an arm.

"Dr. Swenson: (on cross-examination)

"Q. Well, how would you arrive at the approximation of 15 per cent loss of functional use of his arm when the major trouble, and the things that prevent him from doing anything was the pain originating in the neck and shoulder? A. We weren't convinced the major part of it originated from the neck and shoulder. We were cognizant of the fact that there had been injury not only in the arm but also to the muscles extending into the neck and that the functioning working disability and loss was all and could be expressed in the left arm.

*     *     *     *     *     *

"Q. [And it is reasonably certain] That the condition that is causing the loss of use of the arm is traceable to the injuries occurring in the neck and shoulder and muscles and tendons and so forth? A. In the neck and shoulder joint area, yes.

"Q. There was no injury to the arm per se? A. None that we could discern or find as far as hand or arm was concerned except so far as the shoulder was concerned as part of the arm."

Dr. Ergenbright testified, in effect, that medically speaking the shoulder was a part of the arm and that in rating this injury as a 15% loss of function to left arm, it was a mathematical functional evaluation limited solely to medical factors.

Counsel for the Commission state this to be their position:

"* * *. The Commission contends that it cannot presume that these conditions are disabling and has relied upon competent medical evidence that the permanent disability resulting from the condition which Petitioner claims is the loss of function of the left arm, and that these conditions are not disabling in themselves but only in the manner they affect Petitioner's ability to use his left arm."

In effect its position seems to be that it may rely upon the conclusions of the medical consultants that the injury in question "is equivalent to approximately a 15% functional loss of the left arm", and that its ruling based upon this "competent evidence" cannot now be overthrown.

This precise contention has been made in another Arizona case, Tashner v. Industrial Commission, 62 Ariz. 333, 157 P.2d 608, 609, wherein an award denying further compensation was set aside. In that case the medical advisory board's conclusion was:

"'As a result of our examination it is our opinion that any disability he may have suffered as a result of his accident has terminated.'"

Based on this opinion the Commission stopped compensation. We held there was no support in the record for the medical conclusions above stated and therefore no reasonable evidence in support of the Commission's findings. It was there aptly stated:

"* * * The commission should, and must, give due weight and consideration to the opinion of the medical board, but it is not bound by its conclusions, particularly where the conclusions are wholly unsupported by the actual facts, or, as here, contrary to the medical history and findings. It is the medical findings rather than the conclusion which constitute evidence. Obviously, the conclusion or opinion which is counter to the actual facts or findings, and which on the face of the record is illogical and without support, cannot be treated as reasonable evidence."

Thus in the instant case, the Commission cannot accept the medical conclusions as to the resulting functional loss to the left arm as determinative that the only disability herein was an arm injury, within the scheduled disabilities, nor can this court accept same, where as here such conclusions are unsupported by the facts and medical history.

There being no conflict in the medical evidence upon which the Commission relies, we believe it can be held as a matter of law in the instant case that petitioner suffered multiple injuries with a residue of disability, rather than "one injury resulting in multiple conditions" as contended by respondent. Merely by way of illustration the record shows: (a) petitioner had

some osteo-arthritic degenerative changes in the cervical spine due to age, which prior to the accident were in no manner disabling. The accident was the trigger or precipitating factor which aggravated the condition, inflaming and irritating it, which has contributed to the disabling pain in the cervical region of C–5 and C–6 bilaterally, and (b) admittedly petitioner also sustained injuries to the *nerve roots* in the cervical spine which are a part of the central nervous system, and these impinged nerves resulted in a stiff neck with considerable limitation of motion as well as causing periodic headaches. Certainly these are not injuries to the arm. As a matter of fact there was no injury to the arm per se, and as heretofore stated—with all of the treatments petitioner received—no doctor "ever treated the arm as an arm".

The situation before us, as we see it, is not that of a specific scheduled injury from which has flowed other allegedly disabling results, cf Annotation—Workmen's Compensation—Disability, 156 A.L.R. 1344. Rather it is one wherein multiple disabling injuries have been categorized as one scheduled injury (15% loss of use of the arm) and thus treated as but a disability of the arm. The legal problem presented is whether the record sustains such a conclusion. We think it does not.

The case of Bumpus v. Massman Const. Co., Mo.App., 145 S.W.2d 458, 461, is practically "on all fours" with the instant case. There the employee was injured when the rung of a ladder broke beneath him and he caught hold of another rung to save himself from a fall. After treatment to the neck and shoulder there still existed pain and limitation of use. In determining the amount of compensation the Commission chose to regard the injury as though it bore a relation to the loss of the minor arm at the shoulder, rather than an unscheduled injury. The court rejected this theory, however, saying:

"All the evidence in this case was to the effect that the injury was to the shoulder, and the only dispute was upon the question of the precise nature of the injury. Since there was no pretense of any injury to the arm, it was improper to use the loss of arm schedule as the sole standard for measuring the compensation for the injury actually sustained, but on the contrary, the commission should determine the whole percentage of disability suffered by Bumpus from the injury to his shoulder, including that occasioned to the use or function of his arm, and fix the amount of his compensation upon that basis. * * *"

The evidence in that case indicates to us that the Missouri court was dealing with a situation closely akin to the one here presented. Its analysis thereof is highly persuasive. See also, Sammis v. Queens Borough Gas & Electric Co., 257 App.Div. 58, 12 N.Y.S.2d 286.

It should be noted that petitioner is not asking to be compensated for a *scheduled* injury to his arm and in addition thereto to be compensated for his "loss of earning" capacity, such as was denied in Williams v. Industrial Commission of Arizona, 73 Ariz. 57, 237 P.2d 471, and Engle v. Industrial Commission, 77 Ariz. 202, 269 P.2d 604. Rather, petitioner is seeking to be compensated by having his percentage of disability determined as a basis for fixing his loss of earning power as an unscheduled injury.

It appears to us the award made was most unrealistic and not in keeping with either the letter or spirit of the workmen's compensation law. The purported findings and conclusions of the Commission are based upon a false premise, and as they are not sustained by the evidence they are not binding upon us.

The petitioner having suffered multiple injuries which have not healed, we hold the residue of such injuries cannot now be compounded and compensated as a "scheduled injury" to the arm. The Commission therefore erred in not treating this as a case falling under the "odd lot" or non-scheduled injuries which are compensable under subdivision C of Section 23–1044, A.R.S.1956.

Award set aside.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.