436 P.2d 172

**William A. JAYNES, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona, and William H. Stone (Stone Construction Company), John Ahearn, C. Lawrence Huerta and Frank G. Murphy, as members of and constituting the Industrial Commission of Arizona, Respondents.**

No. I CA–IC 153.

Court of Appeals of Arizona.

Jan. 16, 1968.

Rehearing Denied Feb. 15, 1968.

Review Denied March 5, 1968.

McGillicuddy, Johnson, Rich & Robbins, by Chris T. Johnson, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, Phoenix, for respondent, Industrial Commission.

STEVENS, Judge.

The question presented to this Court by writ of certiorari granted on petition of the injured workman, William A. Jaynes, is, whether the petitioner is entitled to an unscheduled award pursuant to A.R.S. § 23–1044, subsec. C.

The petitioner suffered an industrial injury on 27 April 1962. He was painting a large sign when a whirlwind toppled the

sign over, knocking petitioner off the ladder on which he was standing, causing the injury in question. The injury was diagnosed as a fracture, closed, subcapital, right hip.

The 14 May 1962 report of Dr. T. H. Taber, Jr. indicates that a "hip pinning" was performed. It also indicates that claimant had a slow convalescence following the operation and required several transfusions postoperatively. Dr. Taber's 1 August 1962 report indicated that the nail used in the hip pinning had slipped out so that it was barely across the fracture site. For this reason he was readmitted to the hospital for reinsertion of the nail. A later report by Dr. Taber dated 10 October 1962, indicated that the nail was removed. The claimant continued under treatment, and was hospitalized for surgery on 17 June 1963. The surgery at this time was for an abduction osteotomy (placing a plate on the fracture site).

The Commission issued a light work order on 24 February 1964. The claimant was seen again in group consultation on 13 May 1964. At that time the medical consultants felt that the claimant's condition was stationary, and no further treatments or examinations were indicated. They stated "we feel that this patient is able to perform light work but find it difficult to believe that he will be able to return to his regular type of activity". They gave their opinion that the claimant had a partial permanent disability equivalent to approximately a 25% functional loss of the right leg due to the injury of 27 April 1962. In accordance with this opinion the patient was discharged by his attending physician on 25 May 1964. The Industrial Commission issued its findings and award on 17 June 1964, finding that the claimant suffered a permanent partial disability equal to 25% loss of function of the right leg. The claimant filed a petition and application for rehearing on 29 June 1964. This petition for rehearing raised the issue of the determination of average monthly wage, which had previously been set at $100.00. The Commission issued an award on 24 November 1964 which raised the average monthly wage to $389.63. This award carried the same permanent partial disability award as the previous one.

The claimant filed a petition and application for readjustment or reopening of claim on 3 April 1965. The Commission issued a findings and award for new, additional or previously undiscovered disability on 22 April 1965. The claimant was hospitalized on 23 July 1965 for removal of the fixation plate and screws in the right hip. The claimant was again released to light work as of 21 February 1966. He was seen by a group consultation on 13 May 1966. The group made these comments:

"This patient's condition appears to be again reaching a stationary point and the consultants feel that it is not likely that he will return to gainful employment as a carpenter. *He still has some disability about the right hip* but he gets along quite well with the use of a cane and should be encouraged not to discard the cane. (Emphasis supplied)

"Patient may be discharged with a partial permanent disability of 25% functional loss of the right leg as the result of the injury of 4–27–62."

The Commission issued an award, finding a permanent partial disability equal to 25% loss of function of the right leg, on 26 July 1966. A timely petition for rehearing was filed. A formal hearing was held on 8 February 1967. On 7 June 1967, the Commission rendered its ruling reaffirming the 26 July 1966 award. This appeal was then taken.

The statute which governs whether an injury is scheduled or unscheduled is A.R.S. § 23–1044, the applicable parts of which read as follows:

"B. Disability shall be deemed permanent partial disability if caused by any of the following *specified injuries,* and compensation of fifty-five per cent of the average monthly wage of the injured employee, in addition to the com-

pensation for temporary total disability, shall be paid for the period given in the following schedule: (Emphasis supplied)

"15. For the loss of a leg, fifty months.

"21. For the partial loss of use of a * * * leg * * * fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member * * * which the partial loss of use thereof bears to the total loss of use of such member * * *.

"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation."

Only one hearing was held in this case, on 8 February 1967. At that hearing, Dr. Paul E. Palmer, who at that time was the claimant's attending physician, and who had been a member of the consultation board of May 1966, testified. Pertinent portions of his testimony are as follows:

"Q Now, when we talk about a hip injury, is this what we are talking about, this type of injury?

"A In this case, yes. Now, hip injuries can be many different types. This is a fracture, actually, of the proximal end of the thighbone within the capsule[1] of the hip joint, but does not injure the actual cup or ball portion of the joint.

* * * * * *

"Q Now, as a result of the accident and the operations that were performed, can you indicate how Mr. Jaynes' hip joint is different than the normal hip joint?

"A Yes. Subsequent to the removal of the pin and prior to the operation when the plate was put in, because of the fact the fracture had not healed, there was a slipping of the bone at the fracture site. The surgery in which the plate was inserted and the bone was cut below and a realignment was made, was made to put the ball part of the hip joint back in a more normal relationship and then establish the line of stress that goes across the hip joint in such a manner as it would be a compression force and allow healing. *Because of the slipping of the ball portion he has developed some arthritis of the hip joint which may have developed anyway resulting from this type of injury.* But it's probably—and I say probably—increased as a result of the fact that his fracture failed to heal and subsequent surgery was necessary. I would also add that there has been some shortening; the shortening has been due to this collapse and absorption of bone at the fracture site. (Emphasis supplied)

"Q You are referring now to shortening of the leg?

"A Yes.

"Q Now, Dr. Palmer, then am I to assume from what you have testified to that the injury, the fracture and the work that was done with reference to correcting the injury was done in what would commonly be called the hip joint area?

"A Yes."

In LaRue v. Ashton Company, 2 Ariz.App. 101, 406 P.2d 451 (1965), we reiterated the definition of "leg" as set forth in Ujevich v. Inspiration Consolidated Cop-

---

1. A joint capsule is defined by the American Illustrated Medical Dictionary, 22nd edition, as "a fibrous sac, lined with synovial membrane, inclosing a joint."

per Company, 44 Ariz. 16, 33 P.2d 599 (1934):

> "Complete leg extends from where the ball of the femur fits into the socket of the hip to the ankle or foot."

In the LaRue case the claimant broke his left femur a short distance below the ball which fits into the hip socket. This was the only injury. There was no injury to the socket or to the pelvis. In that case we held that the injury was a scheduled injury to the leg. That case can be distinguished from the instant case on the facts. Legal responsibility for workmen's compensation benefits arises from the occurrence of an injury by accident in the course of employment, and extends to physical and mental consequences which are traceable to the accidental injury. Gullick v. Industrial Commission, 94 Ariz. 237, 383 P.2d 123 (1963). Here the fracture in the proximal end of the thighbone actually was within the capsule of the hip joint. The treatment necessary to reduce the fracture consisted of inserting a nail by driving it into the femur through the ball of the hip joint. Partly as the result of the injury, and partly as the result of the failure of the bone to knit properly, the medical testimony shows arthritis developed in the hip joint. This arthritis was one of the results that flowed from the injury. "Arthritis" is defined in the 22nd edition of the American Illustrated Medical Dictionary, page 151, column 1, as, "inflammation of a joint". "Hip joint" is defined in the same volume on page 771, column 1, as "the articulation of the head of the femur with the innominate bone"; and the word "innominate" is defined therein on page 742, column 2, as "not having a name, nameless". Injuries to the hip joint are not among the "specific injuries" set forth in subsection B of A.R.S. § 23–1044. This type of injury must necessarily be compensated under subsection C of A.R.S. § 23–1044 as an unscheduled or "odd lot" injury. The Commission cannot accept the medical conclusion of the examining board which stated that the petitioner suffered a 25% functional loss of the right leg, when the medical evidence shows that there was in fact injury to the right hip, and that the subsequent treatment involved the hip joint, and caused or contributed to the occurrence of arthritis in that joint. It was error for the Commission to compensate the petitioner on the basis of a scheduled disability. For these reasons the award is set aside.

CAMERON, C. J., and DONOFRIO, J., concur.