460 P.2d 43

**Jesus C. HEREDIA, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Gable M. Gibson, Ancillary Executor of the Estate of Harry L. Bell, Deceased (Lazy RR Ranch), Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA-IC 261.**

Court of Appeals of Arizona, Division 1.

Department A.

Oct. 27, 1969.

Rehearing Denied Nov. 12, 1969.

Review Denied Dec. 23, 1969.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent, Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondent Carrier State Compensation Fund.

CAMERON, Judge.

This is a writ of certiorari to review an award of the Industrial Commission of Arizona which found that the petitioner had sustained a scheduled "permanent partial disability equal to a 10% loss of function to the left (minor) arm" and awarding him compensation based thereupon.

This Court is called upon to determine whether the finding by the Commission that the petitioner did not sustain an unscheduled disability as a result of this industrial injury is reasonably supported by the evidence.

Petitioner, Jesus C. Heredia, was a ranch hand for the Lazy RR Ranch near Patagonia, Arizona, when on 3 May 1967 he was run over by a horse and suffered contusions, abrasions of the clavical area and ear, and fractures of the left scapula and the left clavicle. After considerable treatment by the attending physician the petitioner was examined by Dr. Philip G. Derickson for orthopedic evaluation and recommendation. His report to the Commission stated in part as follows:

"CONCLUSIONS AND RECOM-MENDATIONS:

"It is my opinion that this patient has reached a stationary point in recovery from the fracture of the left clavicle and the left scapula which he sustained on 5–3–67. No further treatment appears to be indicated.

"As noted in the physical examination, the patient is unable to completely externally rotate the left shoulder or to elevate the arm over head completely. He also has some limitation of internal rotation. Based on the limitation of motion of the left shoulder secondary to fractures of the left clavicle and scapula, it is estimated that this patient has a permanent, partial disability equivalent to 5% of the left upper extremity."

A findings and award for scheduled permanent disability finding that he had sustained an injury "equal to 5% loss of function of the left (minor) arm" was entered and the claimant petitioned for hearing contending "[t]he disability is believed to involve the shoulder bones and consequently represents an unscheduled disability". A hearing was held at which time Dr. Derickson testified in part as follows:

"Q As far as the fractures themselves are concerned, was there any residual impairment of function because of the fractures to the particular portions of the anatomy that were fractures?

"A I don't believe it had any impairment of the function of the clavicle, which is an expanding mechanism from the chest bone to the shoulder blade. Once it's healed it still carries out that function. Or the shoulder blade, once it's healed still supports the muscles of the shoulder blade. So that once those fractures have healed the bone resumes its function once again without impairment. It's the secondary effect on the moving joint that seems to me to be the reason for the impairment and function of the arm, the other side of the shoulder blade and the clavicle.

"Q Does the scapula have any function separate and apart from the operation of the arm?

"A Not really.

"Q And the clavicle, does that have any separate function?

"A Basically not, it serves as some attachment for the muscles from the neck, and that's about it."

After the hearing the Commission entered its decision upon hearing finding that the petitioner sustained a scheduled "10% loss of function of the left (minor) arm".

In a similar case, discussing A.R.S. § 23–1044, subsecs. B and C, the Supreme Court of Arizona stated as follows:

"The question we have before us is: If A suffers an injury to his arm, and has a residual disability of 1-percent loss of use of that arm, while B suffers an injury to his back, and, as a result, has a residual disability of 1-percent loss of use of his arm, must we treat A's case as a scheduled arm injury and B's case as an unscheduled back injury? Our answer to that is an emphatic 'No,' so long as we have—as here—a finding of fact that no other disability is involved. The statute authorizes compensation for an unscheduled back injury only 'in cases not enumerated in subsection B.' Partial loss of use of an arm—the only disability in this case—is 'enumerated in subsection B.'

"Arnott's contention that a scheduled disability to an arm cannot be used where the arm itself was not injured, is completely without foundation. (citations omitted)." Arnott v. Industrial Commission, 103 Ariz. 182, 185, 438 P.2d 419, (1968).

We are unable to distinguish Arnott v. Industrial Commission, supra, and the instant case. But see Jaynes v. Industrial Commission, 7 Ariz.App. 78, 436 P.2d 172 (1968), Petition for Review Denied 5 March 1968, two days prior to the opinion in Arnott, supra.

Award affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.