505 P.2d 258

Roland L. EVANS, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Duval Sierrita Corporation, Respond-
ent Employer,

Duval Sierrita Corporation, Respond-
ent Carrier.

No. 1 CA–IC 729.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 23, 1973.

Bernard I. Rabinovitz, Tucson, for peti-
tioner.

Twitty, Sievwright & Mills by John F.
Mills, Phoenix, for respondent employer
and carrier.

William C. Wahl, Jr., Chief Counsel,
the Industrial Commission of Arizona,
Phoenix, for respondent.

JACOBSON, Chief Judge, Division 1.

The question presented by this appeal by
way of writ of certiorari from an award of
the Industrial Commission is whether the
injured workman sustained his burden of
proving that his industrial injuries should
be classified as "unscheduled" [1] rather than
"scheduled" as found by the Commission.

On January 31, 1969, the petitioner,
Roland L. Evans, was injured in the course
of his employment when a security patrol
vehicle in which he was a passenger went
over an embankment, throwing him through
the windshield. The sole issue before the
Industrial Commission was whether the pe-
titioner's resultant injuries were sufficent-
ly localized in the right lower extremity to
justify a scheduled award under A.R.S. §
23–1044, subsec. B, par. 15. The Industrial
Commission in a three to two decision
found the injuries were scheduled.

As can be expected, testimony concern-
ing this issue was primarily medical, al-
though the petitioner testified concerning
continued pain in various parts of his body,
other than in his right hip and knee which
the medical experts classified as comprising
the right leg.

It is unnecessary to list all of the
petitioner's various complaints or detail

---

1. "Unscheduled" refers to those injuries
compensable under A.R.S. § 23–1044,
subsec. C (1969), while "scheduled" re-
fers to injuries compensable under A.R.S.

§ 23–1044, subsec. B. Gallardo v. Indus-
trial Commission, 16 Ariz.App. 491, 494
P.2d 391 (1972).

with specificity the numerous injuries the petitioner received as a result of his industrial accident. The medical testimony speaks for itself. It is important at this juncture to keep in mind that it is the residual disabilities that result from any injury which control a determination of whether an injury is to be considered as "scheduled" or "unscheduled", rather than the situs of the initial injury. Arnott v. Industrial Commission, 103 Ariz. 182, 438 P.2d 419 (1968).

Dr. Larry I. Mann, called by the respondent employer, testified as follows:

"A Basically I think the findings which we felt were not normal were his, was the sensitiveness or sensitivity that he had over the lateral aspect of the outer aspect of his right hip, and somewhat decreased motion that he had in the hip, the right hip; and his knee, as far as I believe, some tenderness that he had around his knee. If you just give me a second to review this record—basically our findings were referable to the problem that he was having around his right hip and his right knee. This is general. I could be more specific for you if you want me to.

"Q What were his complaints at that time?

"A Well, his complaints were rather extensive as of September 10, 1970. He complained that he had persistent pain in the right knee with periodic buckling or giving way of his knee. He claimed that he had pain in the right hip region all of the time. He claimed that he had backaches almost constantly, occasionally being sharp and shooting. He complained of numbness and tingling in both hands, and in all of the fingers of his hands. I am just reading from the group consultation at this time.

"He claimed that he had aching pain in his right shoulder. It seemed that he had some visual disturbances, on occasion blurring when he attempted to read. Basically that was (sic) most of his complaints.

\* \* \* \* \* \*

"A Again referring to the group consultation of September 10th, which coincided with my feelings, were that although Mr. Evans had a multitude of complaints, that we were unable to demonstrate really significant physical findings regarding most of his complaints, and that the majority of the things that were found positive on physical examination were referable to his right lower extremity."

On cross-examination, however, Dr. Mann testified:

"Q You mentioned his neck, and you stated here that there is some limitation of lateral rotation in both directions in his neck?

"A Yes. The next sentence I think is self-explanatory.

"Q Is this limitation related to his injury?

"A Well, it would be very difficult to state definitely whether it was or it wasn't. It's possible that it is.

\* \* \* \* \* \*

"However, if we were to assume if he had absolutely no arthritis in his neck, and no pre-existing condition, and a completely normal neck prior to the injury, then I would agree it is probable that the injury caused this."

He also testified that:

"Q On percussion you found discomfort in the lumbosacral region and the proximal sacrum; is that correct?

"A Yes, that is correct.

"Q Is that an objective test?

"A Yes, I would say so.

"Q And would that indicate there was something wrong in that area?

"A I would say that there was, yes.

"Q And would you have an opinion as to whether, whatever was wrong in the lumbar or sacral area, was as a result of his injury?

"A I would say it more than likely was, yes.

"Q All right. Now, your conclusion, Doctor, or the conclusion of the consultants stated that: 'We feel this man's symptoms basically are related to the accident in question, but symptoms in regard to the back and right shoulder seem out of proportion to physical findings.' Is that correct?

"A Yes.

"Q In other words, you felt that he had symptoms in his back and his right shoulder that were related to the injury, but that they were not as severe as he claimed?

. "A Correct, yes.

"Q But he did have a problem in the back and shoulder related to the injury?

"A Yes.

"Q And was this condition stationary?

"A Yes."

And:

"Q All right. And further, I asked you if you had an opinion as to whether or not the problems you observed and discussed were related to the industrial injury, and your testimony was that they probably are; is that correct?

"A Yes.

"Q And although you feel that Mr. Evans may have exaggerated the problems in the back, the neck and the shoulder, do you feel that reasonably medically the problems that he does have continue to pain?

"A Yes.

"Q And that this pain could be disabling?

"A. Yes."

Dr. Richard L. Reilly, called by the petitioner, testified:

"Q All right. Now the problems that you have followed here, the complaints of pain in the neck, shoulder, back, hip and right knee, do you have an opinion as to whether or not, based on reasonable medical probability, these problems are related to his industrial injury?

"A. Yes, I feel they are.

"Q All right. Do you have an opinion based on reasonable medical probability as to whether or not the shoulder, neck and lumbosacral problems contribute to his disability?

"A. Yes, I think so.

"Q And do you think that the disability that he now has is a permanent one?

"A In view of the history, I think it's going to turn out to be that way, yes."

Dr. Willard L. Brown, also called by the petitioner, testified:

"Q Did you arrive at a diagnosis?

"A I did.

"Q What was that?

"A Three in particular: One, chronic right hip sprain; two, lumbosacral sprain; three, right knee sprain.

"Q Did you have an opinion, based on reasonable medical probability, as to what these three conditions, as to whether or not these three conditions were related to his injury?"

\* \* \* \* \* \*

"A He still apparently has pain in his right hip, in his low back and his right knee. I assume that it is the same condition for which I examined him a couple of years ago. This being the case, and there has been no increase in his progress, then I would assume that the condition is stationary and is permanent."

■ It is apparent from a reading of the medical testimony that petitioner suffered rather severe injuries to his right knee and hip and also injuries to other portions of his body, primarily in the lower back, which injuries are permanent and produce pain that is disabling. This is all that is necessary to remove petitioner's compensation from the scheduled category to the unscheduled category. Moore v. Industrial Commission, 16 Ariz.App. 284, 492 P.2d 1222 (1972); Milam v. Industrial Commission, 12 Ariz.App. 308, 470 P.2d 113 (1970); Scott v. Industrial Commission, 80 Ariz. 280, 296 P.2d 954 (1956).

For the foregoing reasons, we hold that the Industrial Commission's award is unsupported by the testimony and is, therefore, set aside.

EUBANK, P. J., and HAIRE, J., concur.