556 P.2d 1148

**George E. ROEDER, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**J. B. Rodgers Air Conditioning Company, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 1481.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 28, 1976.

Rehearing Denied Nov. 5, 1976.

Petition for Review Denied Dec. 7, 1976.

**546**

Harlan J. Crossman, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, State Compensation Fund by Peter C. Kilgard, Phoenix, for respondent employer and respondent carrier.

HAIRE, Chief Judge, Division 1.

The question raised on this review requires that we consider whether petitioner's hip injury should have been considered as unscheduled for permanent disability purposes.[1] It is petitioner's contention that he was entitled to an unscheduled award. The respondent Commission's hearing officer awarded scheduled compensation benefits for a 35% functional loss of use of the right leg.

The facts are not in dispute. Briefly stated, the conditions resulting from petitioner's industrial injury required that he undergo an operation involving the complete replacement of his right hip joint. The extent of the operation is best described by the attending surgeon, Dr. Walter E. George, as follows:

"Q Can you tell us exactly what encompasses a hip replacement, from a medical standpoint?

"A Well, a total hip replacement, such as Mr. Roeder had involving replacing both sides of the hip joint, replacing the sockets with a plastic socket, composed of high-density polyethylene, and the ball or the upper end of the femur is replaced with a stainless steel prosthesis. Both of these devices are then attached to the respective sides of the hip joint with methacrylates, which is a type of foam cement.

"Q I wonder if we could concentrate for a second on the socket site, Doctor. Is there something done to round out the socket area, or what is done?

"A Yes, the acetabulum is deepened and expanded to about two inches in diameter to accept the plastic socket that's put in place there."

---

1. As used in this opinion, the term "scheduled" refers to those permanent disabilities for which compensation is provided under the provisions of A.R.S. § 23–1044B. The term "unscheduled" refers to those permanent disabilities for which compensation is provided under the provisions of A.R.S. § 23–1044C.

After the operation, when petitioner's condition became stationary, a group of medical consultants, including Dr. George, issued a report finding that petitioner had approximately a 35% impairment of the right lower extremity which would be equivalent to approximately a 15% general impairment of the whole man. In discussing the factors taken into consideration in determining the above disability, Dr. George testified as follows:

"Q Doctor, when we talk about permanent disability in the hip, does Mr. Roeder have permanent disability in the hip, from a medical standpoint?

"A Well, I think he does, and I think whenever a hip has to be replaced, no matter how good the hip may seem clinically, I think we can't assume that it's as good as a normal hip. I don't think anybody would ever believe that.

So, I think, yes, there is a degree of permanent disability that is related to his hip that was replaced.

"Q Doctor, when a man stands, is this loss of disability of the hip—how is it manifested? Is it manifested in the loss of motion in the hip area?

"A Are we talking in theoretical terms now?

"Q More with Mr. Roeder, if we could, Doctor.

"A Well, the answer to that is not readily apparent. I'm not trying to avoid the question, but in general terms, and in Mr. Roeder's case too, loss of motion is certainly a big consideration in determining disability; loss of strength; loss of function and the necessity for lateral support; endurance; subjective complaints; the presence or absence of pain. I think all of these things should be taken into consideration in trying to arrive at a statement of disability.

"Q In your opinion, then, all these things that you just related went into your determination that he has a permanent disability; is that correct?

"A Yes, sir, I think so.

"Q When we talk about loss of strength, are we talking about strength of what?

"A Well, strength about the hip, abductor strength, extensor strength, flexor strength. Primarily the presence or absence of a limp. That most readily tells us about the strength of the hip.

I think one other consideration, which is certainly taken into the determination of this, you know, is the fact that it is a prosthetic hip. I don't know—I suppose on a theoretical basis if the patient had a perfect result and had no complaints, then I think he would have no disability—well, I don't think that's really fair, because I think these hips require continued followup."

The question of what constitutes a leg for scheduled injury purposes was first raised in *Ujevich v. Inspiration Consolidated Copper Co.*, 44 Ariz. 16, 33 P.2d 599 (1934). There the Arizona Supreme Court concluded that the "complete leg extends from where the ball of the femur fits into the socket of the hip . . . ." 44 Ariz. at 18, 33 P.2d at 600. In discussing a possible injury to the pelvic bone itself, the *Ujevich* court stated that any resulting impairment to the hip itself should be compensated as unscheduled. Subsequently, in *La Rue v. Ashton Company*, 2 Ariz.App. 101, 406 P.2d 451 (1965), the Court of Appeals, in considering claimant's contention that his injury was in the "hip area" or "pelvic girdle" and therefore should be considered unscheduled, held that under the *Ujevich* definition claimant's injury must be treated as scheduled. The Court emphasized that the evidence showed no injury to the socket or pelvis, but rather only that the left femur had been broken "a short distance below the ball which fits into the hip socket." 2 Ariz.App. at 102, 406 P.2d at 452.

In 1968, the Court of Appeals filed its opinion in *Jaynes v. Industrial Commission*, 7 Ariz.App. 78, 436 P.2d 172 (1968).

There the claimant had initially received a fracture of the proximal end of the thighbone within the capsule of the hip joint, but not involving the actual cup or ball portion of the joint. However, because of slipping of the ball portion of the joint during treatment for the fracture, the claimant developed arthritis in the hip joint with resulting disability. On these facts the Court of Appeals held that it was error for the Commission to treat the resulting disability as scheduled. Review of this decision was denied by the Arizona Supreme Court. However, we note that in arriving at its decision, the Court of Appeals in *Jaynes* did not cite or apparently consider an opinion previously filed by the Arizona Supreme Court in 1963, *Egbert v. Industrial Commission*, 93 Ariz. 33, 378 P. 2d 482 (1963).

In *Egbert, supra*, the complainant had sustained a twisting injury to her hip which aggravated a preexisting condition of arthritis of the right hip joint. There is nothing in the opinion from which it can be definitely ascertained whether both the hip socket and the ball of the femur were involved, although a footnote indicates that a contemplated operation would have involved only the substitution of a metal ball for the dead or deceased ball of the claimant's femur. The Court stated:

> "Although an injury to the hip is not classified and specifically compensated under A.R.S. § 23–1044, subd. B, it is compensable as an injury to the leg. *Ujevich v. Inspiration Consolidated Copper Co.*, 44 Ariz. 16, 33 P.2d 599 (1934)." 93 Ariz. at 35, 378 P.2d at 483

It is difficult to reconcile the reference to *Ujevich* as authority, since, as we have noted above, *Ujevich* did not involve a hip injury, and, more importantly, the *Ujevich* court expressly stated that any injury to

the hip resulting in disability should be treated as unscheduled for compensation purposes. If in fact only the ball of the femur was involved, then on the facts the result in *Egbert* might be considered consistent with the principles stated in *Ujevich*. Viewed in that light, *Egbert's* broadly stated principle that ". . . an injury to the hip . . . is compensable as an injury to the leg. . . ." cannot be considered as authority for the proposition that an injury which results in an impairment of the pelvic bone (socket) portion of the hip joint must also be treated as an injury to the leg for which only scheduled benefits are payable.[2] In any event, we note that in *Egbert* the only question raised was whether the claimant was entitled to a larger *scheduled* award. Therefore there was no necessity for the Court to consider whether in fact she was entitled to an *unscheduled* award.

The latest consideration by the Arizona Supreme Court of the question of whether an injury involving the hip should be treated as scheduled or unscheduled is found in *Miller v. Industrial Commission*, 110 Ariz. 229, 517 P.2d 91 (1973). There the claimant initially sustained "a severe comminuted fracture of his pelvis extending into the socket of the right hip." 110 Ariz. at 230, 517 P.2d at 92. When his condition became stationary, the Commission issued a scheduled award. On appeal the Arizona Supreme Court set aside the award, holding that claimant was entitled to unscheduled benefits. The Court stated the question as being:

> " . . . whether petitioner must be compensated for the impairment to his hip, an unscheduled injury, or for a scheduled injury, the loss of use of his right leg." 110 Ariz. at 230, 517 P.2d at 92.

---

**2.** In *Woppert v. Industrial Commission*, 14 Ariz.App. 72, 480 P.2d 687 (1971), the claimant's degenerative arthritic condition in the ball of the right femur was aggravated in an industrial injury, resulting in surgery whereby the ball of the femur was replaced with a prothesis. The court applied the legal definition of a leg set forth in *Ujevich, supra*, distinguished the facts from *Jaynes, supra*, where "the involvement extended beyond the leg", and upheld a scheduled award.

After reviewing the medical evidence, and without referring to prior decisional law involving the question other than *Ujevich, supra*, the Court concluded:

"The evidence elicited from each of the doctors is that petitioner's residual injury is to his hip and there is no pretense of any injury to the leg. The injury to the hip has resulted not only in the restriction of motion of the right leg, but disabling pain in the hip region to petitioner." 110 Ariz. at 231, 517 P.2d at 93.

■ The Court's reference to "disabling pain" necessitates that we digress briefly and before proceeding consider the Supreme Court's prior opinions in *Arnott v. Industrial Commission*, 103 Ariz. 182, 438 P.2d 419 (1968) and *Scott v. Industrial Commission*, 80 Ariz. 280, 296 P.2d 954 (1956). Without going into the facts, *Arnott* established the principle that if the only remaining residual disability falls within what would otherwise be a scheduled category, then the award must be scheduled, notwithstanding the situs of the original injury or injuries. On the other hand, where there are remaining residual impairments not within the scheduled category, it is likewise improper to disregard these other residual impairments and the award must be unscheduled. *Scott, supra*.

Returning now to our consideration of the *Miller* decision, based upon the facts presented the Court held that the claimant in *Miller* was entitled to an unscheduled award. Since the Court found that the claimant was suffering from residual disabling pain in the hip region, it was not required to determine whether the residual impairment of the hip bone itself would have rendered *Arnott* inapplicable. The Court of Appeals' later decision in *State Compensation Fund v. Industrial Commission*, 25 Ariz.App. 316, 543 P.2d 154 (1975), likewise relied upon a finding of disabling pain in the hip area plus residual impairment of the hip so as to avoid any necessity for further discussion of the *Ar-*

*nott* principles. It should be noted that both the *Miller* and *State Compensation Fund* opinions, *supra*, by relying upon disabling pain *in the hip area* as constituting a showing requiring unscheduled classification, are based upon the unstated assumption that residual disability *in the hip area* does not constitute a disability of the leg.

■ Considering again the facts presented on this review, while there was testimony by petitioner concerning residual continuing pain in his hip area, we cannot classify such testimony as sufficient to come within the category of the *disabling* pain of the *Miller* and *State Compensation Fund* opinions, *supra*. However, we are of the opinion that the uncontroverted medical evidence shows that petitioner's residual physical impairment is not limited to his leg, adopting for this purpose the most expansive view of the *Ujevich* definition as including the ball of the femur. Here we do not have a pelvic fracture which has healed without residual impairment of the pelvic function. Petitioner's injury has necessitated the deepening and expansion of the acetabulum (pelvic socket) to approximately two inches in diameter to receive the replacement plastic socket. The previously quoted testimony of Dr. George concerning the residual physical impairment of the hip is uncontradicted. The hearing officer classifies this impairment as "technical", apparently equating residual physical impairment to loss of motion. Since here the loss of motion can only be measured through leg movement, the hearing officer then applies *Arnott* so as to arrive at a scheduled result. We cannot believe that *Arnott* mandates that residual physical impairment must always be equated to loss of movement. If such were the case, the disabling pain in the hip area in the *Miller* and *State Compensation Fund* decisions, *supra*, would not have merited unscheduled classification. Similarly, here the medical evidence is clear that there is a substantial residual impairment in the hip area—an impairment in the physical function of the petitioner's pelvis. We therefore conclude

that the question of petitioner's entitlement to compensation must be governed by the Supreme Court's decision in *Scott, supra,* and that petitioner should have been awarded unscheduled benefits.

Although the award must be set aside for the above reason, we will discuss one additional contention urged by petitioner. In further support of his claim for unscheduled benefits, he contends that the hearing officer erred in finding that his claimed back disability was caused by degenerative arthritis due to the aging process, rather than any relationship to the industrial injury. We have reviewed the record and find ample support for the hearing officer's findings concerning petitioner's back problems.

The award is set aside.

FROEB, P. J., Department C, and EUBANK, J., concur.