NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IZABELLA ROBBINS, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

BUCKEYE ELEM SCH DIST 33, *Respondent Employer*,

AZ SCHOOL ALLIANCE FOR WORKERS COMPENSATION POOL,
*Respondent Insurance Carrier*.

No. 1 CA-IC 22-0009
FILED 9-29-2022

---

Special Action - Industrial Commission
ICA Claim No. 20200490488
Carrier Claim No. 2019002765A
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Taylor & Associates PLLC, Phoenix
By Nicholas C. Whitley
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Wright Welker & Pauole PLC, Phoenix
By Linnette R. Flanigan, Shannon Lindner
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Vice Chief Judge:

¶1 Izabella Robbins appeals an Industrial Commission of Arizona (ICA) ruling she sustained a scheduled industrial injury. She argues the ICA's administrative law judge (ALJ) should have ruled her impacted, subcapital left femoral neck fracture (meaning she broke her femur just below the femur's head) was unscheduled. We affirm.

## FACTUAL AND PRECEDURAL HISTORY

¶2 While working for Buckeye Elementary School District, Robbins fell and sustained the femoral fracture. The fracture was repaired by screwing several metal pins through the femur into the femoral head. The pins protrude outside the femur opposite its head. Neither the fracture nor the repair affected the femoral head. Robbins' physician, Dr. Billhymer, released her back to work with no restrictions.

¶3 The carrier issued a Notice of Claim Status finding Robbins medically stationary and closing the claim with a permanent impairment and supportive care. The carrier concluded Robbins sustained a scheduled left-leg injury and issued disability benefits accordingly. Robbins requested a hearing, arguing she sustained an unscheduled hip injury.

¶4 Robbins, Dr. Billhymer, and Dr. Amit Sahasrabudhe (who performed an independent medical examination) testified at an evidentiary hearing. Dr. Billhymer described Robbins' injury as common and noted the fracture had healed. He said Robbins continued to complain of pain but functionally "she can do anything." He testified "she does have a decrease in function, both in range of motion, strength and endurance," as would "every patient with a hip fracture, for a very long time." Dr. Billhymer gave no other details.

¶5 By contrast, Dr. Sahasrabudhe testified Robbins had "full range of motion" and "normal strength," though she complained of pain during some tests. He found no loss of function, saying "[h]er function is effectively normal." He opined the screw heads protruding from the side of the femur and outside the hip area caused her ongoing pain. He further opined Robbins' injury was a femoral fracture, not a hip injury.

¶6 The ALJ gave Dr. Sahasrabudhe's testimony more weight and ruled Robbins sustained a leg, not a hip, injury. Accordingly, the ALJ issued an award for a scheduled injury. On review, the ALJ summarily affirmed the decision. Robbins timely filed for judicial review. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. Ariz. §§ 12-120.21A.2, 23-951.A, and Rule 10(a), Ariz. R. P. Spec. Act.

## DISCUSSION

¶7 This court views the evidence in the light most favorable to upholding the award. *Munoz v. Indus. Comm'n*, 234 Ariz. 145, 147, ¶ 2 (App. 2014). The ALJ resolves conflicts in medical opinion evidence. *See Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000) (holding ALJ's resolution of conflicting testimony binds reviewing court when reasonable evidence supports the conclusion). This court defers to the ALJ's resolution of conflicting evidence and will affirm if any reasonable theory of the evidence supports it. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975).

¶8 Arizona workers' compensation law classifies permanent partial disabilities as either scheduled or unscheduled. A.R.S. § 23-1044.B–.C. A scheduled injury is one resulting in a loss of all or part of one of the listed body parts or senses. A.R.S. § 23-1044.B. Scheduled injuries result in a fixed amount of compensation for a specified period. *Id.* Any other loss is unscheduled, and compensation is based on lost earning capacity for as long as the disability exists or until the injured worker's death. A.R.S. § 23-1044.C. A scheduled injury is exclusive unless evidence establishes separate and distinct impairment to other body parts. *Safeway Stores, Inc. v. Indus. Comm'n*, 27 Ariz. App. 776, 777 (1976) ("[I]f the claimant suffers residual impairment to any part of the body other than the scheduled limb, the award should not be scheduled.").

¶9 For purposes of industrial injuries, the long and short of it is simple. A leg injury is scheduled. *See, e.g., Ujevich v. Inspiration Consol. Copper Co.*, 44 Ariz. 16, 18–20 (1934) (distinguishing leg and hip injuries). A hip injury is not. *Jaynes v. Indus. Comm'n*, 7 Ariz. App. 78, 81 (1968).

¶10            Robbins contends she sustained a hip injury. The ALJ did not agree. This issue is neither new nor novel. Going back almost 90 years, Arizona courts have addressed what constitutes an industrial leg injury versus a hip injury. *See, e.g.*, *Ujevich*, 44 Ariz. at 18 (using the "common and accepted meaning" of leg: "[a] limb or member of an animal used for supporting the body, and in running, climbing, or swimming; sometimes specif., that part of the limb between the knee and the foot") (citations omitted); *La Rue v. Ashton Co.*, 2 Ariz. App. 101, 101 (1965) (affirming the definition used in *Ujevich*).

¶11            Arizona long ago recognized the legal definition of "leg" for workers compensation purposes differs from the definition of "leg" for medical purposes. *See Ujevich*, 44 Ariz. at 18. For workers compensation purposes, "a complete leg extends from where the ball of the femur fits into the socket of the hip to the ankle or foot." *Id.* Subsequent cases recognized when a worker injures a leg, "absent evidence of disabling injury to the hip, an injury to the femur would be treated as a scheduled leg injury." *E.g.*, *Safeway Stores, Inc.*, 27 Ariz. App. at 777. In contrast, a worker sustains an unscheduled hip injury when the evidence shows residual physical impairment not limited to leg but also to hip or pelvis. *See Jaynes*, 7 Ariz. App. at 81 (recognizing arthritis in hip "flowed from" a closed, subcapital fracture); *Roeder v. Indus. Comm'n*, 27 Ariz. App. 545, 547–49 (1976) (recognizing residual physical impairment not limited to leg but also to hip and pelvis).

¶12            Consistent with Arizona's long-standing precedent, the ALJ found Robbins sustained a scheduled leg injury. As in *La Rue*, Robbins sustained a subcapital femoral fracture with no complications involving the hip. *See* 2 Ariz. App. at 101. *Jaynes* drives the point home. 7 Ariz. App. at 18. In *Jaynes*, the claimant also sustained a subcapital femoral fracture. *Id.* But unlike Robbins and the *La Rue* claimant, the *Jaynes* claimant developed arthritis in the corresponding hip joint, which "flowed from" the broken femur. *Id.* As a result, the *Jaynes* claimant sustained an unscheduled hip injury.

¶13            Substantial evidence supports the ALJ's ruling. Robbins sustained a left subcapital femoral fracture with no complications involving her hip. Robbins did not persuade the ALJ she had disabling pain or loss of function in her hip. And the ALJ relied on evidence in the record to conclude Robbins has full function of her hip and no residual impairment.

## CONCLUSION

¶14 We affirm.



AMY M. WOOD • Clerk of the Court
FILED: JT