438 P.2d 419

**William S. ARNOTT, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent.**

**No. 9123-PR.**

Supreme Court of Arizona.

In Banc.

March 7, 1968.

Donald J. Morgan, Phoenix, for petitioner.

Glen D. Webster, Jr., Phoenix, for respondent; Robert K. Park, Chief Counsel, The Industrial Commission of Arizona, Robert D. Steckner, Phoenix, Spencer K. Johnston, Dee-Dee Samet, Tucson, Joyce Volts, Arthur B. Parsons, Noel J. R. Levy, Donald L. Cross, William E. Smith, and Michael A. Lasher, Jr., Phoenix, of counsel.

McFARLAND, Chief Justice.

This case is before us on a petition for review of the decision of the Court of Appeals, Division One, 6 Ariz.App. 226, 431 P.2d 300, in which that court set aside an award of The Industrial Commission. Decision of the Court of Appeals vacated, and award of The Industrial Commission of Arizona set aside.

As a trier of the facts, it is the privilege and the duty of the Commission—and not of an appellate court—to resolve all conflicts in the evidence, and draw warranted inferences; where more than one inference may be drawn, the Commission is at liberty to choose either, and this court will not disturb its conclusion unless it is wholly unreasonable. Waller v. Industrial Commission of Arizona, 99 Ariz. 15, 406 P.2d 197; Muchmore v. Industrial Commission of Arizona, 81 Ariz. 345, 306 P.2d 272. We therefore set out the facts in the light most favorable to the findings of the Commission.

Petitioner William S. Arnott, while driving his Volkswagen automobile in the course of his employment, was rear-ended by another vehicle. He was injured, and his car was damaged to the extent of $32.40. Arnott lost no time from his work as a rehabilitation agent for The Industrial Commission—a white-collar job involving desk work, speechmaking, and some travel. The injuries appeared at first to be minor, but, despite treatment by several Phoenix specialists, his symptoms kept getting worse.

He was treated by Dr. Frank Eisenhardt, Dr. Paul E. Palmer, Dr. Stanford Hartman, Dr. D. E. Brinkerhoff, and Dr. George Hoffman. Diagnostic aid was obtained from X-rays and an electromyogram. Treatment included physical therapy and traction. On March 25, 1965, Arnott was seen in a group examination and consultation by Doctors Hartman, Hoffman, Howard Aidem, and Frank DePaoli. At that time Arnott complained that he continued to have pain in his neck and shoulder, difficulty in swallowing, and a sore throat. All tests, X-rays, etc., were essentially negative except for what the doctors termed "subjective complaints of a minor degree of restriction about the left shoulder." They recommended closing the case with no disability.

The Commission made a finding of no disability. Arnott's attorney then petitioned for a hearing to have the finding amended to "show 'minimal permanent disability' instead of 'no permanent disability.'" The Commission ordered another group examination, which was held on November 18, 1965, by Doctors A. F. Miller, Jr., R. A. Johnson, K. L. Huffman, and Hal W. Pittman. This group reported that there was no significant change from the condition shown by the report of the earlier group examination, that no treatment was recommended, and that there was "no indication of any permanent physical impairment attributable to the accident of July 24, 1963."

At the hearing Dr. Pittman stated:

"I would consider that the limitation of the motion of the shoulder such as Mr. Arnott has, though it does represent some decrease in function of that particular extremity, it does not represent a disability."

When asked what degree of decrease in function was present, he answered that it

was "minimal." On being pressed to be more specific, he said that the loss of function of the left shoulder would be "less than 1%."

Dr. Johnson stated that he did not consider the loss of function a physical impairment because it was "minimal."

All eight doctors on the two panels signed their respective reports. These men are outstanding in the fields of neurology, nose and throat, and orthopedics. The only conflicting evidence came from Dr. William LaJoie who did not examine Arnott until 1965—after the latter had become involved in another accident which was not disclosed to the doctor prior to the examination. Dr. LaJoie found many things wrong with Arnott, and, since he had not testified at the hearing, a second hearing was held to take his evidence, which included another electromyogram that contradicted the earlier one. Despite this evidence, the Commission resolved all conflicts in the evidence against Arnott, and awarded him permanent partial disability equal to a 1-percent loss of function of the entire left upper arm. Translated into money, the award was for $87.50 per month for one quarter of a month.

Arnott brought the matter to the Court of Appeals by certiorari. His brief in that court raised only one issue, namely, whether it was proper for the Commission to limit the award to a scheduled disability—loss of the use of an arm—when the injury itself was not to the arm at all, but to the neck and back. He argued that the question is governed by Scott v. Industrial Commission, 80 Ariz. 280, 296 P.2d 954.

In Scott the *uncontroverted* evidence was to the effect that the injured workman had —in addition to arm injuries—a 50-percent limitation of neck movement, and disabling headaches. We held that, under those circumstances, it was improper to conclude that the only disability was an arm injury. While we quoted some language from a Missouri case to the effect that "since there was no pretense of any injury to the arm it was improper to use the loss of arm

schedule as the sole standard for measuring the compensation for the injury," this language was not meant to be taken out of context and used as authority for the proposition that the use of the schedule for loss of use of an arm is improper unless the arm itself is injured. All that Scott, supra, held was that where there are multiple injuries resulting in multiple disabilities, it is improper to allow only for one of the disabilities and ignore the others. In the instant case, while we have multiple injuries (back, neck, etc.), a resolution of the conflicting evidence has left us with the finding that there is no residual disability except a slight limitation of motion of the shoulder, resulting in a 1-percent loss of use of the arm.

A.R.S. § 23–1044 provides:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee * * * shall be paid for the period given in the following schedule:

\* \* \* \* \* \*

"13. For the loss of a * * * minor arm, fifty months.

\* \* \* \* \* \*

"20. The permanent and complete loss of the use of a * * * arm * * * may be deemed the same as the loss of any such member by separation.

"21. For the partial loss of use of a * * * arm * * * fifty percent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, * * * which the partial loss of use thereof bears to the total loss of use of such member * * *

\* \* \* \* \* \*

"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during

such disability, compensation equal to * * *" Etc.

█ The question we have before us is: If A suffers an injury to his arm, and has a residual disability of 1-percent loss of use of that arm, while B suffers an injury to his back, and, as a result, has a residual disability of 1-percent loss of use of his arm, must we treat A's case as a scheduled arm injury and B's case as an unscheduled back injury? Our answer to that is an emphatic "No," so long as we have—as here—a finding of fact that no other disability is involved. The statute authorizes compensation for an unscheduled back injury only "in cases not enumerated in subsection B." Partial loss of use of an arm—the only disability in this case—is "enumerated in subsection B."

Arnott's contention that a scheduled disability to an arm cannot be used where the arm itself was not injured, is completely without foundation. See Aetna Casualty and Surety Company v. Moore, 361 S.W.2d 183 (Tex.1962); Stanley v. United Iron Works Co., 160 Kan. 243, 160 P.2d 708; Paulson v. Muskegon Heights Tile Company, 371 Mich. 312, 123 N.W.2d 715.

█ The Commission correctly allowed Arnott 1-percent loss of use of the left (minor) arm. Since the statute provides compensation at the rate of fifty per cent of his $700-per-month salary, the compensation rate should be $350 per month; since the statute allows fifty months for one hundred per cent disability, and Arnott's disability is only one per cent, the award should be for one-half month, or $175, instead of for one fourth of a month, or $87.50. For this reason the award of the Commission must be set aside.

The award of The Industrial Commission is accordingly set aside, and the opinion of the Court of Appeals is vacated.

UDALL, V. C. J., and STRUCK-MEYER, BERNSTEIN and LOCK-WOOD, JJ., concur.