234 So.2d 895

**Nathaniel McCARTY**

v.

**CAMPBELL PLUMBING COMPANY.**

**I Div. 3.**

Court of Civil Appeals of Alabama.

April 29, 1970.

618

Irwin W. Coleman, Jr., Augustine Meaher, III, and Lyons, Pipes & Cook, Mobile, for appellee.

Jerome P. Shinault, Mobile, for appellant.

THAGARD, Presiding Judge.

The appellant, Nathaniel McCarty, filed in the Circuit Court of Mobile County, Alabama, a petition to recover benefits under the Workmen's Compensation Laws of the State of Alabama, alleging that he had been accidentally injured and had suffered temporary total disability and permanent partial disability while employed by the appellee.

The medical testimony disclosed that the appellant had suffered an injury to the

medial end of the clavicle (collarbone) at the sternum (chest bone), the sternoclavicular junction.

On January 25, 1968, the trial court entered a Finding of Fact and Decree concluding that plaintiff suffered a sternoclavicular separation on the right side and that plaintiff had suffered a 5% permanent partial disability of his right arm and assigned a recovery for permanent partial disability based upon an injury to the right arm. The court further concluded that plaintiff was temporarily totally disabled for a period of seven weeks and was entitled to receive a total of $266.00 for temporary total disability plus $421.80 for 11.1 weeks permanent partial disability for a total of $687.80 and that defendant has paid to plaintiff the sum of $570.00. The court subtracted the total money paid to plaintiff by defendant from the total money deemed to be due plaintiff and entered an award for the balance in the amount of $117.80. It is from this decree that the appellant brings this appeal by certiorari.

We will first address ourselves to the determination of whether a disability occasioned by a rupture of the sternoclavicular joint is, within the meaning of the Alabama Workmen's Compensation Act, scheduled or nonscheduled.

The sternoclavicular joint is the joint formed at the point where the collarbone joins the chest at the center of the chest.

Title 26, § 279(C), Code of Alabama, provides for certain compensation in terms of weeks for certain injuries therein enumerated, including a specification of 222 weeks for the loss of an arm.

Title 26, § 279(C), par. 6, provides that:

"In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty-five percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition * * *."

The trial court by its decree found that the plaintiff-appellant suffered a 5% permanent partial disability of the right arm. It is this finding that the appellant cites in Assignments of Error 1, 2, and 3. The appellant argues that the sternoclavicular joint is not part of the arm and is therefore a nonscheduled injury.

In Malbis Bakery Co. v. Collins, 245 Ala. 84, 89, 15 So.2d 705, 709, where an employee's pelvic bone was fractured the Supreme Court stated:

"The court was correct in holding that plaintiff did not come within the schedule providing for loss of a. leg and did not suffer a permanent disability *due to injury to a member*. Plaintiff's injury was not to his leg, but was an injury to the pelvic bone and back. Plaintiff's leg was not broken, but his pelvic bone was fractured and the whole pelvic bone was pushed upward and backward. The sacroiliac junction .was fractured 'with an anterior and posterior dislocation.' The injury was above the leg. While it is said that the left leg was made permanently shorter, the truth is that the leg was just as long as it had ever been and as a leg was uninjured and unchanged. It was the pelvic bone that was broken and permanently forced upward and out of line. It was this permanent injury to the pelvic bone which caused plaintiff's entire disability."

In Ujevich v. Inspiration Consol. Copper Co., 44 Ariz. 16, 33 P.2d 599, 600, in identifying the meaning of the word "limb" as used in the Arizona Compensation Law, the court said:

"The human body has two arms and two legs, or four limbs. A complete arm, in common parlance, extends from where it connects with the shoulder blade to the hand; * * *."

In Gentry v. Georgia Casualty & Surety Co., 107 Ga.App. 888, 131 S.E.2d 788, 790, the court stated:

"The shoulder, as we construe the law, is not a part of the arm."

In view of the above cited holdings we think that the trial judge erred in his decree of January 25, 1968. By this decree the plaintiff-appellant's injury was limited to the arm and a 5% disability was set by the trial court. This is an incorrect finding and, therefore, the proper basis of award was not employed. The appellant suffered an injury at the sternoclavicular junction which is the end of the collarbone at the chest bone. This junction is not part of the arm. In fact, the shoulder, which also is not a part of the arm, separates the collarbone and the arm. The fact that the use of appellant's arm was impaired by the injury does not of itself bring the injury within the category of a scheduled injury and thus warrant the basis of the award for partial loss of the use of the arm. We think that the holding in the case at bar is analogous to the holding in the case of Bumpus v. Massman Const. Co. (Mo.App.), 145 S.W.2d 458, 461, wherein the St. Louis Court of Appeals stated:

"All the evidence shows, however, that the injury was not to the arm, but to the shoulder, so that in view of this circumstance, it was not proper to base the award upon the theory of nothing more than the proportionate loss of the use of the arm. To be sure, the functional disability of the arm may have comprised a substantial portion of the whole amount of disability suffered, but to have limited the compensation to that particular character of disability necessarily required that the commission take no account of the injury to the shoulder, whatever the precise nature of such injury may have been, in so far as the injury to the shoulder affected Bumpus' functions with respect to the use of portions of his body other than his arm."

The appellant, in his brief, has asked this court to render him an unscheduled award of not less than 50% loss of his ability to earn. It is not within province of this court to determine or establish the percentage of disability of an injured employee, but instead we are restricted to determining whether or not the award given by the trial court was supported by the evidence. But, even if we were disposed to determine the percent of disability, we could not do so in this case because of insufficient evidence. As previously cited, Title 26, § 279(C), par. 6, sets out the proper basis for an unscheduled injury as being 55% of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn after his injury.

The testimony as to appellant's average weekly earnings prior to the injury was sufficient to furnish the trial court with a proper basis for a finding, but the testimony as to how much the appellant is able to earn in his partially disabled condition was not sufficient. We make this observation for the benefit of counsel on the retrial of the case.

As to the appellee's cross assignment of error, we, too, think the court erred in failing to deduct the period of temporary total disability of 7 weeks from the period allowed for the permanent partial disability of 11.1 weeks. In Morris v. Dickson, 252 Ala. 588, 589, 590, 42 So. 2d 337, 338, the court held the rule to be as follows:

"This Court has interpreted the statute as affecting a temporary total disability followed by a permanent partial disability resulting from the same accident. * * * The effect is to deduct from the number of weeks provided for a permanent partial disability the number in which he was totally disabled, each period to be computed on a different basis."

For reasons heretofore assigned the finding and decree of the trial court is reversed and this cause remanded for further proceedings.

Reversed and remanded.