517 P.2d 91

Ralph MILLER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Kitchell Contractors, Inc., Respondent Employer,

Glen Falls Insurance Company, Respondent Carrier.

No. 11243–PR.

Supreme Court of Arizona, In Banc.

Dec. 20, 1973.

Rehearing Denied Jan. 29, 1974.

**230**

Gorey & Ely by Stephen S. Gorey, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Donald L. Cross, Phoenix, for respondent employer and respondent carrier.

STRUCKMEYER, Justice.

On September 25, 1969, petitioner, Ralph Miller, while employed as a carpenter, fell through a hole during construction of a building, sustaining a severe comminuted fracture of his pelvis extending into the socket of the right hip. The Industrial Commission concluded that petitioner was entitled to compensation for the 22% resulting loss of use of his right leg, as set forth in A.R.S. § 23–1044B. Petitioner, believing that he was entitled to an award of an unscheduled disability under subsec. C of A.R.S. § 23–1044 for injury to his hip, brought certiorari. The Court of Appeals affirmed the award, Miller v. Industrial Commission, 19 Ariz.App. 280, 506 P.2d 671 (1973). We accepted review. Decision of the Court of Appeals vacated and award of the Industrial Commission set aside.

A.R.S. § 23–1044B, subsec. 21, provides that for the partial loss of use of a leg a claimant is entitled to:

"* * * fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, * * * which the partial loss of use thereof bears to the total loss of use of such member * * *."

For injuries which are not scheduled under 1044B, a workman is to be compensated in accordance with A.R.S. § 23–1044C, providing:

"In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation."

█ The question presented is whether petitioner must be compensated for the impairment to his hip, an unscheduled injury, or for a scheduled injury, the loss of use of his right leg. The answer to this question can be determined by an examination of the evidence before the Commission and our prior relevant decisions.

Evidence from four doctors, Willard Ergenbright, Clarence Fredell, Thomas Henry and Norman Fee, was taken in this case. All support the conclusion that petitioner sustained a hip disability.

Dr. Ergenbright, who examined petitioner, but, because of a terminal illness, did not testify at any hearing, wrote a letter to the Commission containing this statement:

"He [Miller] has no special abnormality except the right hip which shows some restriction of motion as follows: in measuring forward flexion and backward extension the patient has lost, as measured today, 20 degrees of forward flexion and has lost 30 degrees of backward extension. He has lost 20 degrees of abduction and he has lost 20 degrees of external rotation."

Dr. Ergenbright also stated that the X-rays of the right hip and pelvis showed "some thinning of the joint space." It is plain that Dr. Ergenbright ascribes the restriction of motion of the right leg to the injury of the right hip.

Dr. Clarence Fredell agreed with Dr. Ergenbright, responding to this question: "As you understand this twenty two per cent disability of the lower extremity

\* \* \* that includes not only the leg itself but the hip joint and the pelvis?" with this answer: "Yes, it does."

Dr. Norman Fee testified that Miller's complaint of pain when he places his weight on his leg "was indicative of discomfort in the hip region, the hip joint." He also testified that when he used the word "leg" he meant "that to include the hip joint," because from his personal interpretation the hip is part of the leg. He testified:

"Q. As far as the possible residual impairment of function, would that be in the hip, Doctor?

A. Yes."

It should be stated at this point that medically the doctors used the term "right lower extremity" to include both leg and hip, whereas by legal definition the "leg extends from where the ball of the femur fits into the socket of the hip to the ankle or foot." Ujevich v. Ins. Cons. Cop. Co., 44 Ariz. 16, 18, 33 P.2d 599, 600 (1934).

Dr. Thomas Henry's specialty is internal medicine. He testified that he examined Miller at the request of Dr. Fredell because Miller was having a cardiac arrhythmia, and found that petitioner was a well developed, well nourished, alert and cooperative male "who was in distress with pain in his right hip", "pain over the region of the right hip extending up to the right iliac crest and down into the right groin."

The evidence elicited from each of the doctors is that petitioner's residual injury is to his hip and there is no pretense of any injury to the leg. The injury to the hip has resulted not only in the restriction of motion of the right leg, but disabling pain in the hip region to petitioner. Petitioner testified without contradiction that he walked every day; that he would go about one half a block and pain would set in so that he then would have to limp back home; that when he was walking he generally had pain all the time.

We conclude that petitioner's compensation is to be governed by the decision in Scott v. Industrial Commission, 80 Ariz. 280, 296 P.2d 594 (1956). In Scott, the claimant, a carpenter working at a construction site, fell, injuring his spine, neck, shoulder and left arm. These injuries were disabling in themselves, particularly in the effect on petitioner's ability to use his left arm. We held that the residue of the petitioner's injuries cannot be compensated as a scheduled injury to the arm and that the Commission erred in failing to treat the case as non-scheduled injuries compensable under subsec. C of § 23–1044.

This case is distinguishable from Arnott v. Industrial Commission, 103 Ariz. 182, 438 P.2d 419 (1968). There, the finding of fact was sustained by the evidence that the partial loss of use of an arm was the only disability in the case, although the injury was in the shoulder. Here, there is not only a disability of the right leg stemming from loss of function, but the injury to the hip is causing petitioner further disabling pain.

█ We hold that a scheduled injury is exclusive unless there is evidence of separate and distinct impairment to other parts of the body. As stated by 2 Larson Workmen's Compensation Law, § 58.20:

"The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive."

Petitioner must be compensated under subsec. C of § 23–1044.

The award is set aside.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.