539 P.2d 918

Harold **EGGLESTON**, Petitioner,

v.

The **INDUSTRIAL COMMISSION**
of Arizona, Respondent,

**Nielson Building Equipment**, Respondent Employer,

**Fidelity & Casualty Company of New York,**
Respondent Carrier.

No. 1 CA–IC 1247.

Court of Appeals of Arizona,
Division 1,
Department C.

Sept. 11, 1975.

Rehearing Denied Oct. 10, 1975.

Review Denied Nov. 18, 1975.

Noel J. R. Levy, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Ralph E. Mahowald, Jr., Phoenix, for respondent employer and respondent carrier.

OPINION

NELSON, Presiding Judge.

Harold Eggleston (Eggleston), the petitioner herein, was injured on January 11, 1971 when the wall of a ditch in which he was working caved in, partially burying him. He suffered severe injuries to his chest and shoulder causing him to be hospitalized for surgery for repair of his shoulder. The shoulder surgery was unsuccessful, leaving him with a chronic "acromioclavicular separation" and a complete disruption of the "coracoclavicular ligament". In laymen's terms, the residual condition could be described as a chronic or permanent shoulder separation.

On October 8, 1971, medical and disability compensation benefits were terminated and a notice of permanent disability was issued by the respondent carrier, Fidelity & Casualty Company of New York (carrier), finding that Eggleston had sustained a 15% loss of the left (minor) arm, entitling him to compensation benefits as provided for in A.R.S. § 23–1044B(13) and (21), a scheduled award. This award was protested and a hearing held. The hearing officer found that Eggleston had a scheduled permanent disability and entered an award accordingly.

A writ of certiorari was taken to this Court resulting in a memorandum decision, 1 CA–IC 846, dated December 27, 1973, affirming the award of the Commission. The Supreme Court of Arizona, by minute order entered on February 19, 1974 (11469–PR), vacated the opinion of the Court of Appeals, set aside the award, and remanded the case for reconsideration by The Industrial Commission of Arizona in

conformity with *Miller v. The Industrial Commission of Arizona,* 110 Ariz. 229, 517 P.2d 91 (1973).

As a result of the Supreme Court directive, new hearings were held, essentially for bringing the matter current factually, it being clear from the hearing officer's opening remarks that he would also rely on extensive testimony elicited at the prior hearings. On August 6, 1974, the hearing officer entered a decision finding that Eggleston should be compensated under subsection (C) of A.R.S. § 23–1044, an unscheduled award. Upon a request for review, the hearing officer reversed himself and distinguished the fact situation here presented from *Miller,* supra, and entered a scheduled award identical to the one which was the subject of the first appeal and subsequent reversal by the Arizona Supreme Court, supra. The matter is again before this Court. In our view the fact situation is indisinguishable from Miller, and we must therefore set aside the award.

*Miller v. The Industrial Commission of Arizona,* supra, discusses all of the cases necessary for a determination of this case, as did the hearing officer and the briefs of the parties. *Ujevich v. Inspiration Consolidated Copper Company,* 44 Ariz. 16, 33 P.2d 599 (1934), sets out the legal, as opposed to medical, definition of limb of the body. As applicable here, "a complete arm, in common parlance, extends from where it connects with the shoulder blade to the hand." 44 Ariz. at 18, 33 P.2d at 600.

In *Scott v. The Industrial Commission of Arizona,* 80 Ariz. 280, 296 P.2d 954 (1956), the Supreme Court set aside an award of the Industrial Commission allowing a scheduled permanent disability for 15% loss of function of an arm where Scott also suffered from severe nerve root damage, as well as spine, neck and shoulder injuries, and headaches. The Court found these injuries had not healed, that Scott indeed suffered from them as indicated and that the scheduled award was "most unrealistic and not in keeping with either the letter or spirit of the workmen's compensation law." 80 Ariz. at 286, 296 P.2d at 958.

*Arnott v. The Industrial Commission of Arizona,* 103 Ariz. 182, 438 P.2d 419 (1968), involved a shoulder injury which resulted in a minimal loss of function in an arm. The Court clarified *Scott,* supra, and made it clear that when there was only a residual disability to the arm, the situs of the actual injury was not controlling:

"The question we have before us is: If A suffers an injury to his arm, and has a residual disability of 1-percent loss of use of that arm, while B suffers an injury to his back, and, as a result, has a residual disability of 1-percent loss of use of his arm, must we treat A's case as a scheduled arm injury and B's case as an unscheduled back injury? Our answer to that is an emphatic 'No,' so long as we have—as here—a finding of fact that no other disability is involved.

\*    \*    \*    \*    \*    \*

"Arnott's contention that a scheduled disability to an arm cannot be used where the arm itself was not injured, is completely without foundation." 103 Ariz. at 185, 438 P.2d at 422.

*Miller v. The Industrial Commission of Arizona,* supra, involved a severe fracture of the pelvis extending to the socket of the right hip. The injury resulted in the Industrial Commission awarding Miller a scheduled award for 22% loss of use of his right leg. The Court set aside the award, distinguishing *Arnott,* supra, because of the fact that Miller, in addition to the loss of function and motion in the right leg, had disabling pain in the right hip region, extending into the right groin.

Were the only disability Eggleston suffered the loss of function in his arm, *Arnott, supra,* would obviously control regardless of the situs of the injury. This, indeed, was the finding of the hearing officer:

"17. The evidence did not establish that applicant had any disabling pain or func-

tional impairment of the 'shoulder' or any other part of his body causally related to the subject industrial episode of January 11, 1971; and therefore, legally and factually, the instant proceeding is distinguishable from *Miller v. Industrial Commission,* supra."

Although we have reviewed the evidence in a light most favorable to sustaining the award, *Micucci v. The Industrial Commission of Arizona,* 108 Ariz. 194, 494 P.2d 1324 (1972), and have resolved all conflicts in favor of the finding, *Malinski v. The Industrial Commission of Arizona,* 103 Ariz. 213, 439 P.2d 485 (1968), we still find that the evidence supports only one possible conclusion, *Gronowski v. The Industrial Commission of Arizona,* 81 Ariz. 363, 306 P.2d 285 (1957): Eggleston had disabling pain in addition to the partial loss of use of his arm.

The best evidence of the pain is Eggleston's own testimony, which was uncontradicted, *Miller,* supra:

"Q. BY MR. LEVY: Mr. Eggleston, you indicated that you had areas of pain. What kind of exertion would produce the pain that you demonstrated? Would it just be a short bit of exertion, or sustained exertion?

"A. For a period of time. It don't [sic] start for a couple of hours after I start doing something.

"Q. And then?

"A. Then the more I go, the harder the pain.

"Q. And could you indicate where this area of pain is that you were referring to?

"A. It's right down in the middle, I guess you'd say middle section of the left chest.

"Q. Have you ever had this kind of pain before the injury?

"A. No."

There is, of course, no medical testimony indicating that a permanent shoulder separation does not cause pain when the arm connected to that shoulder is used. The only testimony colorably raising a conflict in this regard was elicited from the carrier's examining physician and at best goes to the degree of disability and not to the presence or absence of the pain itself:

"Q. Mr. Eggleston's disability is based upon the functional loss of the acromioclavicular joint; is that correct?

"A. Actually you are asking me a difficult question, because, ordinarily, an injury to this joint doesn't cause any problems. There is no doubt that he had an anatomical disruption of the joint, but to tell you the truth, many people have these injuries and are basically untreated; have excellent function. So, I would accept that his functional problem is consequent to the injury, but its ordinarily a relatively insignificant injury from a functional point of view.

In fact, people play major athletics, football and baseball, with complete separation of the joint and don't have any significant problem. *The only thing is, if this whole joint, if it's completely disrupted between the acromion and clavicle, it can be painful.*

"Q. I understand. However, I am not asking about academically, I am asking of Mr. Eggleston, and with his own structure and his own symptoms.

"A. It doesn't make any difference. It's been well established. It doesn't matter. *It's different from individual to individual. In fact, the less one does, the less one's problems become."* (Emphasis supplied)

We view this case, as the Supreme Court may well have reviewed it in light of the use of the phrase *"in conformity with"* in their order of remand, supra, as a classic "all fours" factual and legal mirror of *Miller,* supra. Using the language of *Miller,* but substituting the facts of this case, it is clear:

"The evidence elicited from each of the doctors is that petitioner's residual injury is to his [shoulder] and there is

no pretense of any injury to the [arm]. The injury to the [shoulder] has resulted not only in the restriction of motion of the [left arm], but disabling pain in the [shoulder and chest] region to petitioner. Petitioner testified without contradiction that [he tried to use his arm]; that he would go about [2 hours] and pain would set in so that he then [could not use it any more]; that when he was [using his arm in this manner] he generally had pain all the time." *Miller v. The Industrial Commission of Arizona,* supra, 110 Ariz. at 231, 517 P.2d at 93.

Eggleston must be compensated under subsection (C) of A.R.S. § 23–1044.

The award is set aside.

STEVENS and WREN, JJ., concur.