558 P.2d 971

**SAFEWAY STORES, INC.,**
**Petitioner Employer,**

**Travelers Insurance Company,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of**
**Arizona, Respondent,**

**Carl Peterson, Respondent Employee.**

**No. 1 CA–IC 1489.**

Court of Appeals of Arizona,
Division 1,
Department C.

Nov. 3, 1976.

Rehearing Denied Dec. 10, 1976.

Petition for Review Denied Jan. 18, 1977.

Burch, Cracchiolo, Levie, Guyer & Weyl by Richard Q. Nye, Phoenix, for petitioner employer and petitioner carrier.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Ariz.

Treon, Warnicke & Dann, P. A. by Michael J. Valder, Phoenix, for respondent employee.

OPINION

HAIRE, Chief Judge, Division 1.

The question raised on this review is whether an injury to the muscles of the shoulder must be compensated and treated as a scheduled [1] injury to the arm if the

1. Under the workmen's compensation system, A.R.S. § 23–1044 B, injuries to certain specific body parts must be compensated according to a schedule in predetermined amounts. For

specific situs of the injury is to soft tissue located on the "arm" side of the point where the arm bone connects to the shoulder blade.

Claimant employee, respondent here, sustained an injury in a fall arising out of his employment which manifested itself as pain in the right shoulder area. The injury was medically diagnosed as a tear and/or inflammation in the muscles comprising the "rotary cuff" or "rotator cuff", which is a fibrous band of four muscles surrounding the shoulder joint whose primary function is to attach and move the arm.

Four doctors testified at the hearing. All the medical testimony[2] was to the effect that the area of injury was to the muscles which comprise the rotator cuff part of the shoulder. The radiologist testified that the specific location of the tear in the rotator cuff was at the "top of the joint"; there was other medical testimony of inflammation and possible atrophy of one of these muscles.

Because the function of these muscles is to move the arm, the claimant experiences his injury as pain when he moves his shoulder in trying to move his right arm. This has resulted in a limitation of his ability to use his right arm. The hearing officer found that claimant had "disabling pain inducing a functional impairment in his shoulder", and therefore awarded him compensation for an "unscheduled" injury.

The only argument raised on this appeal is that, although claimant and all four doctors testified that the pain and situs of the injury are in the shoulder, for purposes of workmen's compensation law anything located on the "arm side" of the junction which connects arm to body must be denominated an "arm", and therefore compensated as a scheduled injury.

This argument is based on language in the recent case of *Eggleston v. Industrial Commission*, 24 Ariz.App. 444, 539 P.2d 918 (1975) which, quoting from the Arizona Supreme Court's decision in *Ujevich v. Inspiration Consolidated Copper Co.*, 44 Ariz. 16, 33 P.2d 599 (1934), set out the legal definition of an arm as "a complete arm, in common parlance, extends from where it connects to the shoulder blade to the hand." *Eggleston, supra*, 24 Ariz.App. at 445, 539 P.2d at 919. The *Ujevich* case, where the language originally appeared, was concerned with an injury to the femur (bone of the upper thigh); the legal question there at issue was whether the term "leg" as used in the workmen's compensation schedule for injuries would be applicable to an injury to a femur, although the medical and dictionary definitions of a leg included only that portion of the limb between knee and foot. The Supreme Court decided that the word should be interpreted according to its commonly accepted meaning as "extend[ing] from where the ball of the femur fits into the socket of the hip to the ankle or foot." 44 Ariz. at 18, 33 P.2d at 600. The holding in *Ujevich*, therefore, was that, absent evidence of disabling injury to the hip, an injury to the femur would be treated as a scheduled leg injury.

There is no dispute in this case that both in common parlance and in medical terminology the injury and disability sustained by claimant was to his shoulder. The only question is whether the language in *Ujevich* forces us to disregard the anatomical entity which comprises the shoulder.

Cases since *Ujevich* have explained that, if the claimant suffers residual impairment to any part of the body other than the scheduled limb, the award should not be scheduled.

"unscheduled" injuries, those not enumerated in subsection B, compensation is computed under A.R.S. § 23–1044 C as a percentage of the claimant's loss in earning capacity during the actual period his disability continues.

2. One doctor felt that claimant's pain was primarily due to a biceps tendonitis, which is an inflammation in the major tendon that goes through the shoulder joint and is inserted within the joint itself. The hearing officer found, however, that claimant's injury involved a tear of the rotary cuff and this finding is supported by the majority of the medical testimony.

In *Miller v. Industrial Commission,* 110 Ariz. 229, 517 P.2d 91 (1973) (rehearing denied), the claimant was not limited to a scheduled leg injury where an injury to the right hip resulted in disabling pain in the hip region causing a loss of motion in the right leg.

The Supreme Court in *Miller* stated that if the disability in the leg had been the *only* disability in the case, citing *Arnott v. Industrial Commission,* 103 Ariz. 182, 438 P.2d 419 (1968), the award would have been scheduled. Impairment to the hip, however, resulted in the opposite holding:

> "We hold that a scheduled injury is exclusive unless there is evidence of separate and distinct impairment to other parts of the body. As stated by 2 Larson Workmen's Compensation Law, § 58.20:
>
> 'The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'
>
> Petitioner must be compensated under subsec. C of § 23–1044."
>
> 110 Ariz. at 231, 517 P.2d at 93

Petitioner cites *Eggleston, supra,* for the language defining a "legal arm". The Court in *Eggleston* was directly concerned with an injury to the shoulder with resultant impairment to the function of the left arm. Applying *Miller,* the *Eggleston* case, as ultimately decided, observed that while the situs of the original injury was not controlling, in order to find a scheduled injury there must be a finding that the *only* disability was to the scheduled part and that *no other disability* was involved. 24 Ariz.App. 445, 539 P.2d at 919.

An impairment or disability in any other part of the body removes the case from the scheduled classification. *See also, Roeder v. Industrial Commission,* 27 Ariz. App. ——, 556 P.2d 1148, (1 CA–IC 1481, 1976) where an injury resulting in impairment to the hip socket was treated as unscheduled although the primary result of the impairment was a limitation of motion in the leg.

If claimant's impairment extends beyond the arm side of the joint and into the muscles toward the shoulder blade then *Eggleston* is directly applicable to our case. Claimant and all four testifying doctors did consistently refer to the location of claimant's pain and injury as in his "shoulder".

The muscles involved are in the shoulder. There was testimony of some atrophy of the supraspinatus muscle, which lies along the upper part of the shoulder blade. One doctor testified that there was inflammation at the point of the rotator cuff in the tendon which extends to the scapula or inside of the shoulder joint.

All the doctors testified that the disability and impairment occurred in the claimant's shoulder.

Since the muscles involved extend laterally across the shoulder, it would be contrary to all the medical evidence to define the injury as occurring only to that part of the muscle on the arm side of the joint.

Petitioner's theory, however, is that the nomenclature used is not controlling, but rather if the situs of the injury occurs at a part of the body which would fall on the "arm side if the arm were amputated through the joint", as a matter of law the injury must be defined for workmen's compensation purposes as to the arm. Even if it were possible to so localize the area of disability and impairment in soft tissue injury, we feel that while this analysis is convenient and appropriate in dealing with injuries to bony structure of the body it is unhelpful and simplistic as applied to the muscle and connective tissue structures. If applied here it would force us to ignore all the testimony of the anatomical structure of the muscles involved. The testimony clearly established that the rotator cuff is composed of four muscles which arise from the upper part of the shoulder blade and which attach to the bone of the upper arm. The muscles which move the upper arm are located in the shoulder and not the arm. The whole functioning system lies laterally along the shoulder; even if the specific site of the injury could be localized to one point, the disability, impairment, atrophy and pain

occur to this functioning system. The shoulder is a distinct anatomical entity in medical, legal, and lay understanding. It makes little sense to disregard this distinct entity for purposes of workmen's compensation awards.

We note that in addition, we have in this case ample evidence from which the hearing officer determined that claimant suffered disabling pain in his shoulder, which would bring the case within the rationale of the *Miller* decision, *supra*, and the Court of Appeals' later decision in *State Compensation Fund v. Industrial Commission*, 25 Ariz.App. 316, 543 P.2d 154 (1975).

Other jurisdictions which have considered the question here presented have determined that:

". . . the shoulder is not part of the arm and where the injury is to the shoulder it is not proper to base the award on the proportionate loss to the use of the arm."

*M. R. Thomason & Assoc. v. Jones*, 48 Ala.App. 67, 261 So.2d 899, 902 (1972)

In an extended discussion of the question of finding a scheduled injury to an arm where the injury is to another part of the body, the Court in *McCarty v. Campbell Plumbing Co.*, 45 Ala.App. 617, 234 So.2d 895, 897 (1970) used the quoted language in the Arizona *Ujevich* case to help in a determination that an injury to the sternoclavicular junction, resulting in an impairment in the shoulder and arm, should be treated as unscheduled.

"In *Ujevich v. Inspiration Consol. Copper Co.*, 44 Ariz. 16, 33 P.2d 599, 600, in identifying the meaning of the word 'limb' as used in the Arizona Compensation Law, the court said:

'The human body has two arms and two legs, or four limbs. A complete arm, in common parlance, extends from where it connects with the shoulder blade to the hand; * * *.'

"In *Gentry v. Georgia Casualty & Surety Co.*, 107 Ga.App. 888, 131 S.E.2d 788, 790, the court stated:

'The shoulder, as we construe the law, is not a part of the arm.'

*       *       *       *       *       *

*In fact, the shoulder, which also is not a part of the arm, separates the collarbone and the arm.* The fact that the use of appellant's arm was impaired by the injury does not of itself bring the injury within the category of a scheduled injury and thus warrant the basis of the award for partial loss of the use of the arm. We think that the holding in the case at bar is analogous to the holding in the case of *Bumpus v. Massman Const. Co.* (Mo. App.), 145 S.W.2d 458, 461, wherein the St. Louis Court of Appeals stated:

'All the evidence shows, however, that the injury was not to the arm, but to the shoulder, so that in view of this circumstance, it was not proper to base the award upon the theory of nothing more than the proportionate loss of the use of the arm. To be sure, the functional disability of the arm may have comprised a substantial portion of the whole amount of disability suffered, but to have limited the compensation to that particular character of disability necessarily required that the commission take no account of the injury to the shoulder, whatever the precise nature of such injury may have been, in so far as the injury to the shoulder affected Bumpus' functions with respect to the use of portions of his body other than his arm.'" (Emphasis added).

All the cases therein discussed recognize that the shoulder is a distinct anatomical entity, not part of the arm.

The decision and award of the hearing officer were in conformity with Arizona law as well as law from other jurisdictions which have considered the questions involved.

The award is therefore affirmed.

FROEB, P. J., and JACOBSON, J., concur.