736 P.2d 373

**Thelma W. DYE, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**K Mart # 4387, Respondent Employer,**

**K Mart Corporation c/o KM Administrative Services, Respondent Carrier.**

**No. 1 CA–IC 3471.**

Court of Appeals of Arizona, Division 1, Department C.

July 29, 1986.

Johnson & Kurth by Chris T. Johnson, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Moore, Long & Lester by Joseph L. Moore, Phoenix, for respondent Employer and Carrier.

CONTRERAS, Judge.

This is a special action review of an Industrial Commission award for a *scheduled* disability. The sole issue concerns this disability classification: whether an arm bone fracture, which results in restricted motion, pain, and swelling at the shoulder joint is a scheduled or an unscheduled disability. Because only the arm is anatomically abnormal and the shoulder pain and swelling are nondisabling, the correct disability classification is scheduled. We therefore affirm the award.

On July 23, 1983, while on light work status from a prior back injury, the peti-

tioner (claimant) fell and fractured the anatomical neck of the left humerus.[1] This fracture became stationary in October 1984 with the following residuals: restricted abduction, external rotation and reach, lowered left shoulder elevation, and minimal shoulder tenderness. Independent consultants rated a 15% impairment of the left upper extremity, which limited overhead work and lifting.

Based on this evaluation, the July 23, 1983 injury claim was closed with a scheduled disability. Although the claimant's treating physician, orthopedic surgeon John Crothers, M.D., agreed with this evaluation, the claimant protested, asserting that the disability should be unscheduled.

Pending a hearing, another independent consultant, orthopedic surgeon Vincent J. Russo, M.D., evaluated the claimant. He also agreed with the group's impairment rating "of the left upper extremity as it relates to [the claimant's] left proximal humeral fracture and loss of movement."

The claimant and Drs. Crothers and Russo testified concerning the residual effects of the arm fracture. The claimant described her current symptoms of pain extending from the left shoulder down to the elbow, swelling in the upper arm and occasionally in the shoulder, and restricted ability to reach and lift with the left arm.

Dr. Crothers confirmed that the industrial injury caused a fractured humeral neck of the left arm. He concurred with the consultants' opinion that this condition was stationary with a 15% permanent impairment of the left upper extremity. When asked to explain the upper extremity rating, he testified that "the AMA guidelines ... give shoulder fusions an upper extremity rating. That's not just my interpretation of it. If it involves the shoulder joint or distally it's upper extremity as far as limitations go." Dr. Crothers also testified that the claimant had occasional shoulder pain but that her chief complaint of pain concerned her back.

Dr. Russo testified that he had independently evaluated the claimant's condition. Based on the AMA Guides, muscle appearance and strength, and pain, he rated a 15% permanent impairment of the left upper extremity. Dr. Russo was not cross-examined concerning this opinion.

The administrative law judge found that the medical evidence established an upper extremity impairment. Relying exclusively on this evidence, he concluded that the disability was scheduled. On administrative review, the claimant argued that recent case law compelled an unscheduled classification. The administrative law judge nevertheless summarily affirmed the award. This special action followed.

On review, the claimant argues that her disability is unscheduled because her shoulder is affected. To conclude otherwise, she asserts, confuses the legal distinction between a scheduled arm and an unscheduled shoulder with the medical definition of an upper extremity.

■ The schedule applies to impairments of the "arm." *See* A.R.S. § 23–1044(B)(13), (21). If, however, more than the scheduled member is affected, the disability is unscheduled. *E.g., Miller v. Industrial Commission,* 110 Ariz. 229, 517 P.2d 91 (1973). The residual effect of an injury, not the location of the injury itself, determines the classification. *E.g., Arnott v. Industrial Commission,* 103 Ariz. 182, 438 P.2d 419 (1968).

These principles have been applied to unschedule *some* shoulder impairments. *See Low v. Industrial Commission,* 140 Ariz. 52, 680 P.2d 188 (App.1984); *Safeway Stores, Inc. v. Industrial Commission,* 27 Ariz.App. 776, 558 P.2d 971 (1976). Yet *all* loss of shoulder joint motion is rated as an upper extremity impairment. *See* American Medical Association, *Guides to the Evaluation of Permanent Impairment,* tables 16–19 at 20–23 (2d ed. 1984) (Guides). In at least some cases, therefore, the legal distinction between a scheduled arm and an

---

1. The humerus is the upper arm bone extending from the shoulder to the elbow. The anatomical neck is located between the humeral head and the tubercles. The humeral head fits into a cavity of the scapula to form the shoulder joint. Ligaments hold the joint together and muscles cover and protect it. *See Attorneys' Dictionary of Medicine* (MB) at H–93, S–84 (1986).

unscheduled shoulder appears to conflict with the medical definition of the upper extremity.

■ This conflict, however, is only apparent. Although shoulder joint impairments are classified as impairments of the upper extremity, the Guides also provide for the conversion of upper extremity impairments to impairments of the whole person. *Id.* table 20 at 23. Whole person impairments, of course, are unscheduled. Furthermore, the Guides are neutral: they provide a method for conversion but do not define when conversion is proper. *See id.* at viii. We conclude that conversion is proper only if the disability is unscheduled. Accordingly, the Guides replicate rather than contradict the basic legal distinction. Restated in these terms, the claimant is arguing that all shoulder impairments should be converted to whole person impairments. The primary authority for claimant's assertion is *Low v. Industrial Commission.* We do not believe *Low* supports this generalization.

In *Low,* the claimant dislocated her shoulder. The residual anatomic abnormality was to the shoulder structure, not to the arm bone. In addition, there was disabling shoulder pain. These residuals affected arm function by limiting range of motion at the shoulder joint. This court set aside an award for a scheduled disability. *See Low v. Industrial Commission,* 140 Ariz. at 54–55, 680 P.2d at 190–91.

*Low* cites the earlier decision of this court in *Safeway Stores, Inc. v. Industrial Commission.* In *Safeway Stores,* the injury was a torn rotator cuff. As in *Low,* the anatomic abnormality was to the supporting structure of the shoulder joint, not to the arm. Indeed, this distinction between the supporting structure of the shoulder joint and the arm bone is explicit:

Petitioner's theory, however, is that the nomenclature used is not controlling, but rather if the situs of the injury occurs at a part of the body which would fall on the 'arm side if the arm were amputated through the joint', as a matter of law the injury must be defined for workmen's compensation purposes as to the arm. Even if it were possible to so localize the area of disability and impairment in soft tissue injury, *we feel that while this analysis is convenient and appropriate in dealing with injuries to bony structure of the body* it is unhelpful and simplistic as applied to the muscle and connective tissue structures. If applied here it would force us to ignore all the testimony of the anatomical structure of the muscles involved. The testimony clearly established that the rotator cuff is composed of four muscles which arise from the upper part of the shoulder blade and which attach to the bone of the upper arm. The muscles which move the upper arm are located in the shoulder and not the arm. The whole functioning system lies laterally along the shoulder; even if the specific site of the injury could be localized to one point, the disability, impairment, atrophy and pain occur to this functioning system. The shoulder is a distinct anatomical entity in medical, legal, and lay understanding. It makes little sense to disregard this distinct entity for purposes of workmen's compensation awards.

*Safeway Stores, Inc. v. Industrial Commission,* 27 Ariz.App. at 778–79, 558 P.2d at 973–74 (emphasis added). In addition, the residual shoulder pain was again disabling. The court affirmed an award for an unscheduled disability.

■ The present case involves an injury to the arm bone. The only evidence of an anatomic abnormality is the humeral neck fracture. Furthermore, there is no evidence that the claimant's shoulder pain and swelling caused the restricted motion or are otherwise disabling. The present case is therefore the converse of *Low* and *Safeway.* *Safeway* strongly suggests that an impairment resulting from injury to the arm bone itself is a scheduled disability. We adopt this rule. Absent disabling pain, the situs of the anatomic abnormality determines the disability classification.

■ This rule is consistent with the basic principle that situs of impairment controls the disability classification. An impairment includes both anatomic and functional

abnormality or loss. *See Smith v. Industrial Commission,* 113 Ariz. 304, 552 P.2d 1198 (1976) (adopting the definition of "permanent impairment" found in the preface to the AMA Guides, 1st ed.); *cf.* Guides at vii, 225–26 (2d ed. 1984). Furthermore, functional impairment at a joint can always be described as either restricted extremity motion or as restricted joint motion. Such semantics should not govern the classification of disabilities. Indeed, *Low* rejects this verbal game.

The claimant's disability therefore is scheduled. We affirm the award.

CONCURRING:

GRANT, J., and PAUL G. ULRICH, J. Pro Tem., concur.

NOTE: The Honorable PAUL G. ULRICH, Judge Pro Tempore has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. VI, § 3 and A.R.S. §§ 12–145 and 12–147.