909 P.2d 1088

**UNISOURCE CORPORATION, Petitioner Employer,**

**Liberty Mutual Fire Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Guy T. Campo, Respondent Employee,**

**The Industrial Commission of Arizona— Special Fund Division, Respondent Real Party in Interest.**

**No. 1 CA–IC 94–0115.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 28, 1995.

Jones, Skelton & Hochuli by Charles G. Rehling, Phoenix, for Petitioners.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

The Industrial Commission of Arizona, Special Fund Division by Laura L. McGrory, Phoenix, for Real Party in Interest.

John Winter, Chandler, for Respondent Employee.

## OPINION

FIDEL, Judge.

Our workers' compensation statute provides in certain cases for payment by the Special Fund Division of the Industrial Commission of a portion of the disability compensation of an injured worker whose permanent disability and loss of earning capacity are attributable to the combined effects of present and preexisting permanently disabling injuries. This case concerns a compensation carrier's untimely claim for such a contribution by the Special Fund.

Under Arizona Revised Statutes Annotated ("A.R.S.") § 23–1065(D), a carrier who wishes to claim apportionment from the Special Fund shall notify the Commission of its claim at the time the carrier issues a notice of permanent partial disability pursuant to A.R.S. § 23–1047(A).[1] The carrier did not meet this deadline. Under Commission rules, one party may seek to join an interested party in a pending proceeding by applica-

---

1. A.R.S. § 23–1065(D) provides:

The employer or insurance carrier shall notify the commission of its intent to claim reimbursement for an eligible claim under subsection B or C of this section not later than the time the employer or insurance carrier notifies the commission pursuant to § 23–1047, subsection A. Upon receiving notice the commission may expend funds from the special fund created by this section for travel and discovery procedures and for the employment of such independent legal, medical, rehabilitation, claims or labor market consultants or experts as may be deemed necessary by the commission to assist in the determination of the liability of the special fund, if any, under subsection B or C of this section. In the event there is any dispute regarding liability to the special fund pursuant to subsection B or C of this section, the commission shall not delay the issuance of a permanent award pursuant to § 23–1047, subsection B.

tion to the presiding administrative law judge ("ALJ") "at least 30 days prior to the date set for any hearing." Arizona Administrative Code ("A.A.C.") R20–5–150 ("Rule 150").[2] The carrier did not attempt to join the Special Fund as an interested party within this deadline either. Instead, the carrier waited until the date of a hearing concerning the Commission's loss-of-earning-capacity determination and then raised the subject of apportionment orally before the ALJ and by letter to the Chief Counsel of the Commission. The ALJ ruled that the carrier had forfeited its apportionment claim by failing to pursue it in a timely manner.

■ The first question presented is whether a carrier who has not notified the Commission of its apportionment claim pursuant to A.R.S. § 23–1065(D) is obliged to seek joinder of the Special Fund pursuant to Rule 150. We answer this question in the affirmative.

■ The second question presented is whether the carrier's failure to seek timely joinder *obliged* the ALJ to dismiss the carrier's claim. We answer this question in the negative. We conclude that the ALJ had discretion under A.A.C. R20–5–157 ("Rule 157") to impose the sanction of dismissal, to impose a lesser sanction, or to relieve the carrier of any sanction. Because the ALJ in this case treated noncompliance as an absolute bar and did not recognize or exercise his discretion, we set aside the order denying

apportionment. We make no suggestion, however, how such discretion should be exercised at the hearing *de novo.*

I.

In August 1991, Guy T. Campo, respondent employee, injured his right shoulder, neck, and right leg in an industrial accident. Campo's treating physician discharged him in July 1993 with a 30% permanent impairment to the "right arm."[3] Before the present injury, Campo had undergone an industrial knee injury, for which he had required a knee replacement; Campo also suffered from degenerative arthritis of the hip and a significant leg length disparity dating back to a hip fracture he had sustained as a boy.

In July 1993, Liberty Mutual, the petitioner carrier, filed with the Commission a "notice of permanent disability and request for determination of benefits" pursuant to section 23–1047, but did not describe the disability as apportionable under section 23–1065. In November 1993, the Commission issued a permanent disability determination, attributing to Campo a 58.73% loss of earning capacity. Both Campo and Liberty Mutual filed timely requests for hearing.

At the scheduled hearing on March 28, 1994, Liberty Mutual first raised the issue of apportionment, attributing its failure to do so earlier to the claimant's inadequate compliance with discovery.[4] Only claimant's testi-

---

2. Rule 150 provides:

   A. An administrative law judge may join as a party applicant or party defendant any person, firm or corporation in favor of whom or against whom a right to relief may appear to exist and over whom the Commission may acquire jurisdiction.

   B. The joinder may be made upon application of any interested party or upon the presiding administrative law judge's own motion if such joinder appears appropriate.

   C. Any party seeking to join other parties shall make application and serve a copy on the party to be joined. Such application shall be filed with the presiding administrative law judge at least 30 days prior to the date set for any hearing.

   D. Notice of joinder shall be sent by the presiding administrative law judge to the party and such party shall appear and may participate in the proceedings as any other party.

3. As Campo injured his shoulder, not exclusively his arm, the carrier appropriately treated it as an unscheduled, not a scheduled disability. *See* A.R.S. § 23–1044(C); *Safeway Stores, Inc. v. Industrial Comm'n,* 27 Ariz.App. 776, 777–79, 558 P.2d 971, 972–74 (1976).

4. Liberty Mutual scheduled Campo's deposition for February 28, 1994; the record indicates that it deposed him before the hearing and does not indicate that the deposition took place on a different date. Campo did not timely answer Liberty Mutual's interrogatories, but neither did Liberty Mutual file a motion to compel his answers. Liberty Mutual scheduled an independent medical examination ("IME") on March 16, 1994, but Campo failed to appear. Liberty Mutual moved to preclude Campo from presenting evidence at the hearing; but, by way of alternative sanction, the ALJ assigned the cost of the missed examination to Campo's counsel, who had neglected to inform his client of the date. The record does

mony was scheduled on that date, and the ALJ deferred ruling on apportionment until the Special Fund had been notified and given an opportunity to respond.

The next day, Liberty Mutual notified the Chief Counsel of the Commission by letter of its intent to claim apportionment. On March 30, the Special Fund denied the request for apportionment and argued that "any request for joinder at this stage of the proceedings" was untimely under Rules 150 and 132 [5] and A.R.S. § 23–1065(C). On March 31, Liberty Mutual replied that, because the claim was appropriate for apportionment and the Special Fund was not prejudiced by the late notice, the Special Fund "should be added as a party." On April 1, the ALJ denied apportionment because it was not timely requested under A.R.S. § 23–1065(D) and Rules 150 and 132. Liberty Mutual's request for administrative review was denied.

## II.

The parties debate whether the carrier's failure to comply with A.R.S. § 23–1065(D) and Rule 132 causes forfeiture of its statutory entitlement to apportionment. This court, however, settled that issue in *Special Fund Division v. Industrial Comm'n,* when we found that "a carrier's failure to provide timely notice of its intent to claim apportionment would [not] necessarily bar the carrier from asserting [the] claim at a later time." 182 Ariz. 341, 344, 897 P.2d 643, 646 (App. 1994) [hereinafter *Morin* ]. There is no need to revisit that issue in this case.

We turn instead to a question left open by *Morin.* How other than by notice under section 23–1065(D) may a carrier formally present the question of apportionment and provide the Special Fund an opportunity to respond? More specifically, must a carrier that fails to comply with section 23–1065(D) apply to join the Special Fund as an interested party under Rule 150? We hold that it must.

Liberty Mutual argues that it had no duty to seek joinder under Rule 150 because notice to the Commission under section § 23–1065(D) eliminates such a need. The flaw in this argument is that Liberty Mutual did *not* give notice under section 23–1065(D). Had it done so, it could indeed have dispensed with joinder; timely notice under section 23–1065(D) suffices by itself to make the Special Fund a party and requires the Industrial Commission to adjudicate both the claim for permanent disability compensation and the apportionment claim in the same award. When, however, as in this case, statutory notice is not provided, *Morin* necessarily contemplates some alternative means of raising the issue of apportionment and providing the Special Fund an opportunity to respond. And as the Special Fund unquestionably is an interested party, the sole and obvious means provided by Commission rule is to move for joinder under Rule 150.

We must therefore address the effect of Liberty Mutual's untimely request for joinder of the Special Fund. Although Rule 150 would have permitted the ALJ to join the Special Fund as an interested party in this action, the rule requires a party seeking joinder to "make application and serve a copy on the party to be joined" and to file the application "with the presiding administrative law judge at least 30 days prior to the date set for any hearing." The Special Fund contends that, as a consequence of Liberty Mutual's failure to provide the requisite 30 days of notice, its joinder claim is barred. To support this argument, the Special Fund cites *Word v. Industrial Commission,* 175 Ariz. 474, 857 P.2d 1328 (App.1993). In *Word,* however, a comparable issue was not presented. There, the ALJ attempted after the only hearing on a claim to join a person who had never received notice or an opportunity to appear. *Id.* at 477, 857 P.2d at 1331. Though *Word* barred such belated joinder as a matter of due process, it did not state or

---

not indicate what Liberty Mutual may have learned of Campo's prior injuries at his deposition. Liberty Mutual, however, attributed its failure to discover and assert a timely apportionment claim to Campo's failure to answer interrogatories or attend his initial IME.

**5.** A.A.C. R20–5–132 ("Rule 132") provides, "[i]f the notices required by A.R.S. § 23–1065 are not given to the Commission, the Commission shall not be bound by the testimony and evidence presented at a hearing as it relates to the imposition of liability upon the special fund."

suggest that any untimely motion for joinder is barred automatically by Commission rule.

In fact, we need look no further than the Commission rules to answer the question *Word* does not address. Rule 157 provides:

(A) Any interested party who fails to abide with [sic] the provisions of these rules shall not be permitted to present any evidence at any of the proceedings before the Commission on the claim, or the request for hearing may be dismissed in the discretion of the presiding administrative law judge. The presiding administrative law judge or the Commission may, in his or its sound discretion, relieve the party of the sanctions imposed for his failure to comply with these rules for good cause shown.

(B) Sanctions may be granted where an interested party fails to comply with discovery or fails to comply with an order of the presiding administrative law judge or the Commission. Sanctions may include the assessment of reasonable attorney fees and costs or the party may be restricted from presenting evidence as provided in subsection (A) of this rule.

Factors relevant to determining whether noncompliance should be excused include (1) a pattern of failure to comply with the rules, (2) due diligence of counsel, (3) the presence of evidence to support Liberty Mutual's claim, and (4) prejudice to the Special Fund. *Brown v. Industrial Comm'n*, 154 Ariz. 252, 254, 741 P.2d 1230, 1232 (App.1987). In short, the sanction for non-compliance is left to the informed discretion of the ALJ.

Nothing in the record of this case suggests that the ALJ recognized or exercised his discretion to determine whether, as a sanction for non-compliance, Liberty Mutual's apportionment claim should be dismissed. Instead the ALJ found noncompli-ance a complete bar to Liberty Mutual's apportionment claim.

When the ALJ applies the wrong legal test, "we must affirm [the] Industrial Commission award if, under the correct test, the record supports only one conclusion." *Karber/Interstate Air v. Industrial Comm'n*, 180 Ariz. 411, 414, 885 P.2d 99, 102 (App. 1994). This is not such a case. Factors that might support outright dismissal of the apportionment claim are these: Liberty Mutual failed to comply with A.R.S. § 23-1065(D) and later with Rule 150; it has not to date acknowledged when it actually discovered Campo's preexisting impairments; and its explanation for its delayed notice to the Special Fund—that Campo failed to answer interrogatories and to attend the first IME—ignores that it deposed Campo before the scheduled hearing. But factors that might support a lesser sanction are these: Liberty Mutual has an apparently meritorious claim for apportionment; it offered to relieve any prejudice by agreeing to pay the costs arising from its delay; and further hearings were necessary at the time of the request. Upon this combination of factors, the ALJ might have exercised his discretion in either direction. Because instead, without recognizing his discretion to do otherwise, the ALJ deemed himself obliged to dismiss the claim, we set aside the denial of apportionment.

VOSS, P.J., and TOCI, J., concur.